**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-03084-NYW-SBP

JAMES WOO,

Plaintiff,

v.

MOSES STANCIL,
ADRIENNE SANCHEZ,
DELACRUZ, Officer
JARED POLIS,
PHIL WEISER,
LEE PUGA,
TERRI PICCIONI,
LONG, Case Manager,
EDWARDS, Sergeant, and
BARR, Sergeant,

Defendants.

---

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Susan Prose, United States Magistrate Judge**

Plaintiff James Woo is incarcerated and in the custody of the Colorado Department of Corrections ("CDOC"). In this case, he sues CDOC and other Colorado state officials, claiming that his rights have been violated in myriad ways. The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367(c). Defendants have filed three motions to dismiss, which collectively seek dismissal of all of Mr. Woo's claims. ECF Nos. 87, 111, 113.

The court considers the Motions pursuant to 28 U.S.C. § 636(b)(1)(A), the memoranda referring the Motions (ECF Nos. 88, 112, 114), and the Order Referring Case (ECF No. 34), and

concludes that oral argument will not materially assist in the resolution of the matter. Having carefully reviewed the Motions and associated briefing, information subject to judicial notice, and the applicable law, the court now respectfully **RECOMMENDS** that the Motions be **GRANTED**.

## BACKGROUND

### I. Facts[1]

Mr. Woo is currently incarcerated at the Centennial Correctional Facility in Cañon City, Colorado ("CCF"), where he is serving a sentence of life in prison without the possibility of parole. *People v. Woo*, No. 18CA0584, 2020 WL 14044778, at *1 (Colo. App. Nov. 25, 2020); ECF No. 75 at 2. Following his conviction in 2018, Mr. Woo appealed, and the Colorado Court of Appeals upheld his conviction. *Woo*, 2020 WL 14044778, at *5. Mr. Woo's residence in the state correctional system has been marked by frequent moves between facilities and long stints in restrictive housing, largely because of Mr. Woo's consistent refusal to share a cell with another inmate. ECF No. 75 ¶¶ 1-2, 32-33, 54 & n.11, 60-62, 67, 70-71; *id.* ¶ 61 (asserting that Woo's refusals to accept a cellmate led to his being "charged and convicted of disobeying a lawful order" five times). The instant action specifically concerns Mr. Woo's conditions of confinement between 2022 and 2024 and their alleged impact on his ability to challenge his conviction.

On July 13, 2022, Mr. Woo filed a petition for post-conviction relief in El Paso County District Court. *Id.* ¶ 27; *see also* Register of Actions, *People v. Woo*, No. 2016CR002069 (El

[1] The court draws the following facts from the Second Amended Complaint (ECF No. 75), the operative pleading in this case, as well as information subject to judicial notice.

Paso Cnty. Dist. Ct.).[2] According to Mr. Woo's description, his pending post-conviction petition brought pursuant to Colorado Rule of Criminal Procedure 35(c) (the "Rule 35(c) Petition") raises several claims regarding his representation in the underlying criminal trial, including that his defense attorneys "represented him under an actual conflict of interest"; breached their representation agreement, which left him without certain expert witnesses to aid his defense; and "violated his right to counsel of choice." ECF No. 75 ¶ 27. In his pleading here, Mr. Woo generally contends that Defendants here violated his constitutional rights by wrongfully depriving him of his personal property, by subjecting him to unconstitutional conditions of confinement, and by impeding his ability to represent himself in the pending post-conviction proceeding. *Id.* ¶¶ 1-77.

On November 4, 2022, Mr. Woo was moved to the Colorado State Penitentiary ("CSP"), a high-security institution. *Id.* ¶ 1. He asserts that he was "regressed" to CSP, where housing is segregated, after he "conveyed his psychological need for isolation to Mental Health and indicated he would pose a threat to any cellmate." *Id.* ¶¶ 1 & 2 n.1.

At the time of his transfer to CSP, Mr. Woo possessed a collection of personal items,

[2] A court may take judicial notice of "another court's publicly filed records 'concerning matters that bear directly upon the disposition of the case at hand.'" *Hodgson v. Farmington City*, 675 F. App'x 838, 841 (10th Cir. 2017) (quoting *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); citing *St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.")). Here, in light of Mr. Woo's contention that the actions of some Defendants in the instant matter interfered with his access to the court in the post-conviction phase of his case, the court properly takes judicial notice of the publicly-filed records in that matter. The court last reviewed the Register of Actions in Mr. Woo's post-conviction proceeding on September 28, 2026.

including electronics, toiletries like mustache scissors and safety razors, and utensils. *Id.* ¶ 3. Three days after his arrival at CSP, Mr. Woo was notified that he could not bring some of his personal effects into the institution, and he was given the option of mailing them somewhere else for safekeeping or forfeiting them in accordance with a CDOC Administrative Regulation ("AR") governing disposition of inmate property: "Property items not authorized as a result of a scored classification regressive move will be considered contraband and disposed of in accordance with AR 300-06, *Searches and Contraband Control*." ECF No. 75 ¶ 6 (quoting AR 850-06, *Offender Property*, § IV(B)(4)). Per Mr. Woo, CSP utilized a form that deems contraband "any canteen item that is not on the CSP approved canteen list," *id.*, and if

> the item does not in and of itself present a security or safety threat, [an offender] may be allowed to mail the item(s) to an address outside of DOC at their own expense. If an offender does not have the available funds to mail the item out within ten calendar days of notice, the item(s) will be destroyed in accordance with this policy.

AR 300-06, *Searches and Contraband*, § IV(Q)(6)(d)(1)). Mr. Woo lacked the funds to mail out his contraband items and, as a result, forfeited them. ECF No. 75 ¶ 6. He estimates the value of the items, which he purchased from the prison canteen, to be "about $500." *Id.* ¶ 4. Another confiscation of Mr. Woo's personal property occurred on May 17, 2023, when Defendant De La Cruz took coffee and tea bags from him without providing a "contraband slip." *Id.* ¶ 5.

To address the confiscation of his property, Mr. Woo availed himself of CDOC's three-step grievance process. *Id.* ¶ 19. The court surmises from the pleading that these grievances were denied. *Id.* ¶ 20.

Between June 26, 2023, and December 26, 2023, Mr. Woo was relocated "17 times among ten facilities" because of his repeated refusal to accept a cellmate. *Id.* ¶ 32. During that

period, Mr. Woo was unable to access the facilities' law libraries "for all but 24 days." *Id.* Notwithstanding these alleged barriers to law-library access, on July 12, 2023, Mr. Woo was able to file a "motion for return of property" in state court, in which he sought the return of property seized by the government as part of his criminal case. *Id.* ¶ 41; *see also* Register of Actions, *Woo*, No. 2016CR002069.

Mr. Woo was relocated to CDOC's Denver Reception and Diagnostic Center ("DRDC") in November 2023. ECF No. 75 ¶ 70. At that facility, Ms. Barr, a correctional officer, and Mr. Edwards, a case manager, allegedly mishandled Mr. Woo's legal property. *Id.* ¶¶ 67-68, 70-71.

On December 26, 2023, Mr. Woo was transferred back to CCF, where he was able to access the law library. *Id.* ¶ 33. He asserts, however, that his access was limited to two two-hour sessions each week. *Id.*

On February 9, 2024, the state court in Mr. Woo's criminal matter gave him a deadline of March 15, 2024, to supplement his Rule 35(c) Petition. *Id.* ¶ 35; *see also* Register of Actions, *Woo*, No. 2016CR002069 (in order extending the deadline to March 15, 2024, stating that "[t]he court once again encourages Mr. Woo to change his mind and allow the court to appoint an attorney to represent him"). Mr. Woo began reviewing his post-conviction discovery materials a few days later, ECF No. 75 ¶ 36, but he failed to meet the March 15, 2024 deadline. *Id.* ¶ 35. Nevertheless, Mr. Woo continued the review process and was granted several extensions of the review period by Defendant Piccioni, a legal assistant at CCF who was supervised "remote[ly]" by Defendant Puga, another legal assistant. *Id.* ¶¶ 34, 36-37. However, on September 11, 2024, Ms. Piccioni notified Mr. Woo that he would not receive additional extensions and that his review period would terminate on October 11, 2024—a decision Mr. Woo attributes to Ms. Puga.

*Id.* ¶ 38. When Mr. Woo's access to his criminal discovery materials ended in October 2024, he had reviewed "less than half" of the information contained on twenty-six DVDs—which itself was just a fraction of the six terabytes[3] of discovery generated in Mr. Woo's criminal case. *Id.* ¶¶ 30, 38.

Mr. Woo's litigation of his Rule 35(c) Petition continues at this time. On July 17, 2026, the state court issued an order addressing Mr. Woo's "Combined Motions for Production of Client Files, Discovery Printouts, Appointment of Investigator, and Access to Discovery Discs at CDOC." *See* Register of Actions, *Woo*, No. 2016CR002069. In addressing the aspect of that motion requesting that the state court issue an order to the CDOC "to provide him some unknown amount of time to access the discovery discs the prosecution already provided to him," *id.* at 6, ¶ 15, the state judge rejected Mr. Woo's contention that a state court has the inherent power to compel the CDOC to abide by such orders. *Id.* The state judge found that the record in Mr. Woo's postconviction proceeding demonstrated no "improper limitations on Defendant's ability to communicate his needs and legal issues" with the state court. *Id.* at 7, ¶ 18. The court listed ***fifty-six*** filings Mr. Woo had made in that case "without an attorney (and ***this is not every filing***)," *id.* at 7-9, ¶ 18 (emphasis added), and observed that Mr. Woo was actively engaged in related litigation during the same timeframe:

> In addition, Defendant prosecuted an appeal in this matter in 2024CA268. As he notes, he also engaged in civil litigation against his former attorneys in this jurisdiction in case 2019CV227 and is currently prosecuting an appeal in that matter in 2025CA615. He litigated appeals against them in 2021CA343, published as *Woo*

[3] A single terabyte consists, "conservatively," of "millions of pages." *Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, No. 12-cv-03012-WJM-NYW, 2016 WL 277721, at *2 (D. Colo. Jan. 22, 2016); *see also Schwarz v. United States*, 828 F. App'x 628, 634 n.4 (11th Cir. 2020) ("3 terabytes would equal approximately 660 million pages of 'printed text'").

> *v. Baez*, 2022 COA 113, 522 P.3d 739, as well. He also sued the Sheriff of this county. *See Woo v. El Paso County Sheriff's Office*, 2019CV103. And he prosecuted an appeal in that matter through the court of appeals to the Colorado Supreme Court. *See Woo v. El Paso County Sheriff's Office*, 2022 CO 56, 528 P.3d 899.

*Id.* at 9-10, ¶ 19.

Most recently, on September 4, 2026, the state judge issued an "Order Appointing Counsel Over Defendant's Objection." *See* Register of Actions, *Woo*, No. 2016CR002069. In that Order, the state judge chronicled the long history of Mr. Woo's criminal case: his conviction of first-degree murder on February 6, 2018; the lengthy post-conviction appeal process; his voluminous other litigation, including against the CDOC; and his long-pending Rule 35(c) Petition, the resolution of which has been delayed by Mr. Woo's decision to proceed without an attorney. *See generally id.* The state court found:

> The Court has given more than enough time for the resolution of the postconviction claims here. Given Mr. Woo's incarceration, the volume of material he still claims he needs to review, the lack of an efficient mechanism for him to do so, his decision to embark on litigation before every level of state and federal court rather than focusing on the post-conviction litigation, and his inability to adequately make progress, the Court appoints counsel to represent him.
>
> If Mr. Woo declines to work with that counsel (absent a legitimate and good faith conflict) the Court intends to proceed under the portion of Crim. P. Rule 35(c)(3)(V) and will forward the petition to the prosecution for review, response, and ultimate resolution.

*Id.* at 14-15, ¶¶ 39-40.

## II. Procedural History of the Instant Litigation

Mr. Woo initiated this case on November 20, 2023. ECF No. 1. The first iteration of Mr. Woo's pleading included a plethora of claims, including claims asserting that he was deprived of

property without due process when he was moved to CSP and that he was thwarted from accessing the court and the right to represent himself in his post-conviction criminal proceeding because the prison failed to facilitate his review of at least six terabytes of case material. *See generally id.*

On April 3, 2024, the undersigned issued a twenty-page order directing Mr. Woo to submit an amended pleading. ECF No. 11. In that order, the court provided a detailed explanation of the deficiencies in the original complaint, including the defects in Mr. Woo's procedural and substantive due process claims. *Id.* at 11-13. The court laid out the legal principles governing those claims so that Mr. Woo could reframe his pleading. *Id.* With regard to Mr. Woo's claims premised on the assertion that CDOC regulations hindered his right to self-representation in his post-conviction proceeding, the court pointed to law holding that a plaintiff "does not have a constitutional right to appear pro se in his criminal appellate and post-conviction proceedings." *Id.* at 14 (citing *Martinez v. Court of Appeal*, 528 U.S. 152, 160 (2000)). And the court also described the legal framework for pleading a plausible access-to-courts claim and informed Mr. Woo that conclusory contentions "that he was not given adequate access to the law library and legal research" did not plausibly establish that he was denied access to the court and, further, that his pleading was devoid of allegations "adequately identify[ing]" an "actual injury" required to state a claim on that basis. *Id.* at 14-15.

Finally, the court delineated the elements by which it would evaluate the plausibility of Mr. Woo's claims under the Equal Protection Clause and the Eighth Amendment. *Id.* at 17-19. The court pointed Mr. Woo to the key Supreme Court authority governing both claims and cautioned him that his amended pleading must allege sufficient facts to meet these standards. *Id.*

Following the court's extensive explanation of the specific ways in which Mr. Woo's pleading failed to articulate any plausible claim for relief, Mr. Woo submitted an amended complaint. ECF No. 15. Another United States Magistrate Judge reviewed that pleading and recommended that a portion Mr. Woo's claims be dismissed, ECF No. 19, prompting Mr. Woo to request permission to submit a second amended complaint. ECF No. 22. On October 23, 2024, Senior United States District Judge Lewis T. Babcock denied Mr. Woo's motion to amend, overruled his objections to the recommendation, and ordered that some of Mr. Woo's claims proceed to litigation and that the remainder be dismissed. ECF No. 25.

After significant litigation, including the submission of a motion to dismiss the amended complaint (ECF No. 51), this court granted Mr. Woo leave to submit a second amended pleading that expanded both the scope of his claims and the named defendants. ECF No. 74. In the operative Second Amended Complaint, Mr. Woo brings four claims pursuant to 42 U.S.C. §1983 alleging various violations of his federal constitutional rights and one claim asserting that the taking of his property was tortious under Colorado law. Construed liberally in Mr. Woo's favor, each claim breaks down into numerous subclaims resting on multiple legal theories:

***Claim One***, entitled "Deprivation of Property without Due Process Pursuant to Established Procedure," challenges the handling of Mr. Woo's personal property, premised on the contention that certain CDOC regulations relating to forfeiture of property (1) violate his Fourteenth Amendment right to procedural due process; (2) contravene the Fourteenth Amendment's protection against arbitrary government power and rise to the level of a substantive due process violation; (3) violate his equal protection rights under the Fifth Amendment; (4) subject him to takings without just compensation in violation of the Fifth

Amendment; (5) violate the Cruel and Unusual Punishment Clause of the Eighth Amendment; and (6) also violate the Eighth Amendment's prohibition on excessive fines. *Id.* ¶¶ 1-21. Mr. Woo brings Claim One against Defendant Stancil, the Executive Director of the CDOC, and Defendant Sandoval, then-Warden of CSP, in their official capacities,[4] and against Ms. De La Cruz in her individual capacity. *See id.* at 2-4, 7.

***Claim Two***, labeled "Unconstitutional State Statute As-Applied," is brought against Governor Polis and Attorney General Weiser in their official capacities. *Id.* ¶¶ 22-25. In this claim, Mr. Woo asserts that the Colorodo Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § 24-10-101 *et seq.*, violates his due process rights and right to access the court under the First and Fourteenth Amendments by barring "replevin claims against state entities." *Id.* ¶ 25.

***Claim Three*** asserts a "Deprivation of Legal Case Materials and Retaliation." *Id.* at 14. This claim is brought against Mr. Stancil and Defendant Sanchez, the Director of the CDOC Office of Legal Services, in their official capacities, and against CDOC legal assistants Ms. Puga and Ms. Piccioni in their individual capacities. *Id.* at 2-3, 7, 14. Mr. Woo asserts that these officials interfered with his access to legal materials, in violation of his due process and equal protection rights and in contravention of his right of access to courts. *Id.* ¶¶ 26-48. A separate

---

[4] "Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (cleaned up). The CDOC Defendants do not contend that Mr. Woo seeks relief that is barred by the Eleventh Amendment, *see generally* Docs. 87, 113, which does not prohibit claims for prospective relief for an ongoing violation of federal law. *See, e.g.*, *Eaves v. Polis*, 167 F.4th 1304, 1313 (10th Cir. 2026) ("[A]s a general rule the Amendment does not bar suit for prospective relief against a state official sued in his official capacity so long as the complaint alleges an ongoing violation of federal law."). The court therefore understands the non-monetary relief Mr. Woo demands in connection with his official-capacity claims to fall within these legally-authorized parameters.

claim-within-a-claim asserts that Ms. Puga and Ms. Piccioni retaliated against Mr. Woo by "terminating Woo's access to his case materials" following his naming Ms. Puga as a defendant in this lawsuit," *id.* ¶ 49, and by Ms. Piccioni "denying [him] law library access for the first half of January 2025 without justification supported by [Administrative Regulation]" after she denied his grievance on October 28, 2024. *Id.* ¶ 50.

***Claim Four*** challenges Mr. Woo's "Frequent Arbitrary Relocations and [Restrictive Housing] Placements without Disciplinary Charge," on due process, equal protection, access to the court, and cruel and unusual punishment grounds. *Id.* ¶¶ 53-65. The claim is brought against Mr. Stancil and Ms. Sanchez in their official capacities, and Defendant Long, a case manager, in his individual capacity. *Id.* at 2-3, 8, 23.

***Claim Five***, entitled "Willful and Wanton Deprivation of Property," *id.* ¶¶ 66-77, mounts state-law tort claims against Mr. Edwards and Ms. Barr, the correctional staff members who worked at DRDC when Mr. Woo was incarcerated there in late 2023, in their individual capacities. *Id.* ¶¶ 66-73. Mr. Woo asserts that the manner of handling his property at DRDC makes these officials liable to him on theories of replevin, conversion, "and any other applicable tort under Colorado law." *Id.* ¶ 72.[5]

For these alleged violations of his rights, Mr. Woo seeks relief in the form of a declaratory judgment holding that various CDOC policies "are unconstitutional and must be invalidated," including "CDOC's mandatory property forfeiture regulations . . . as applied to property legitimately purchased from CDOC canteen," *id.* at 6, 29; "compensatory damages

[5] A sixth claim, challenging "Harassing and Video-Recorded Strip Searches, ECF No. 75 ¶¶ 66-77, was severed from this action and later voluntarily dismissed by Mr. Woo. *See Woo v. Stancil*, No. 25-cv-02932-NWY-SBP (D. Colo.) (ECF Nos. 9, 11).

against the appropriate defendants sued in their individual capacities" *id.* at 29; and various forms of injunctive relief, including directives regarding the replacement of all of his property that was confiscated and the implementation of multiple mechanisms for allowing him more access to the massive amount of discovery materials in his underlying criminal case. *Id.* at 29-30.

All Defendants have moved to dismiss the claims against them. By virtue of the timing of service, the CDOC Defendants—Barr, Edwards, Stancil, Sanchez, Sandoval, Puga, Long, De La Cruz, and Piccioni—have filed two separate motions to dismiss, *see* ECF Nos. 87, 113, and Governor Polis and Attorney General Weiser have filed their own motion to dismiss. ECF No. 111. The Motions are fully briefed and ripe for disposition.

## ANALYSIS

### I. CDOC Defendants' Motions

The CDOC Defendants seek dismissal of Mr. Woo's claims against them in their entirety. They argue that Claim One must be dismissed because Mr. Woo fails to state any plausible claim for relief related to the handling of his personal property, ECF No. 87 at 3-13; ECF No. 113 at 4-7; that Claim Three cannot proceed because Mr. Woo states no cognizable claim based on his access to legal materials, ECF No. 87 at 13-20; ECF No. 113 at 8-11; that Claim Four states no plausible claim for relief related to Mr. Woo's various transfers among CDOC facilities, ECF No. 87 at 20-23; and that Claim Five, which encompasses various state-law tort claims, fails for lack of subject-matter jurisdiction and failure to state a claim, *id.* at 23-26. Defendants De La Cruz, Puga, Piccioni, and Long—the only Defendants sued in their individual capacities—also raise the defense of qualified immunity as to the claims brought against them. *Id.* at 19, 22-23; ECF No. 113 at 9-11.

### A. Legal Standards

#### 1. Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

In applying these principles, the court is mindful that Mr. Woo proceeds pro se and thus affords his papers and filings a liberal construction. *Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th Cir. 2019). But the court cannot and does not act as his advocate, *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019), and applies the same procedural rules and substantive law to Mr. Woo as to a represented party. *Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1235 (D. Colo. 2012) ("*Pro se* status does not relieve Plaintiff of the duty to comply with various rules and procedures governing litigants and counsel, or the requirements of the substantive law and, in these regards,

the Court will treat Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court.”).

### 2. Qualified Immunity

Under the doctrine of qualified immunity, “government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A motion to dismiss based on qualified immunity creates a presumption of immunity, *Bledsoe v. Carreno*, 53 F.4th 589, 606 (10th Cir. 2022) (citation omitted), and the burden shifts to the plaintiff to overcome this presumption. *Hunt v. Montano*, 39 F.4th 1270, 1284 (10th Cir. 2022). To rebut an assertion of qualified immunity, “the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.” *Surat v. Klamser*, 52 F.4th 1261, 1270-71 (10th Cir. 2022) (quotations omitted). An official’s conduct violates clearly established law when, at the time of the challenged conduct, “the contours of a right are sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right.” *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation modified) (emphasis added).

The court has discretion to decide which of the two requirements of qualified immunity to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Regardless of the order, “if the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense.” *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016).

### B. Application

The court addresses the question whether Mr. Woo has plausibly alleged a violation of a constitutional right, on any of the theories he proposes, and takes up the qualified immunity defense raised by Defendants De La Cruz, Puga, Piccioni, and Long in conjunction with the associated claims.

#### 1. Personal Property Claim (Claim One)

Mr. Woo asserts that he sustained multiple violations of his constitutional rights in connection with limitations on the type and quantity of personal property CDOC allows him to possess. *See generally* ECF No. 75 ¶¶ 1-21. The court addresses each component of the claims, in turn.

##### a. Procedural Due Process

***Contraband personal property at CSP.*** The first component of this claim concerns the forfeiture of Mr. Woo's personal items following his regression to CSP. ECF No. 75 ¶¶ 1-11. Specifically, Mr. Woo alleges that he was entitled to a hearing before his property was confiscated pursuant to AR 850-06. *Id.* ¶¶ 9-11. And because this forfeiture was effectuated pursuant to "an established state procedure," Mr. Woo asserts, any post-deprivation remedy, such as CDOC's grievance process, is insufficient to address the deprivation. *Id.* ¶ 9. In their Motions to Dismiss, the CDOC Defendants argue that the due process claim fails because Mr. Woo (1) lacks a protected property interest in the items that were taken from him and that were disposed of in accordance with CDOC regulations, and (2) even if he had such a property interest, he received constitutionally adequate pre- and post-deprivation remedies. ECF No. 87 at 4-6; ECF No. 113 at 4-8.

The Due Process Clause protects against the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The court "examine[s] procedural due process questions in two steps: the [court] first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Thus, "[a] facially valid procedural-due-process claim is comprised of two elements: '(1) a constitutionally protected liberty or property interest, and (2) a governmental failure to provide an appropriate level of process.'" *Sutton v. Mikesell*, 810 F. App'x 604, 610-11 (10th Cir. 2020) (quoting *Citizen Ctr. v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014)).

Although due process protections extend to prisoners, "the extent of that protection is significantly less than that guaranteed to free persons." *Estate of DiMarco v. Wyoming Dep't of Corr.*, 473 F.3d 1334, 1339 (10th Cir. 2007) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974)). In the prison context, "[a]n inmate's interest in possessing personal property while incarcerated is subject to extensive regulation." *Rueb v. Stancil*, No. 24-cv-03014-PAB-STV, 2025 WL 3478322, at *7 (D. Colo. Nov. 5, 2025), *report and recommendation adopted*, 2025 WL 3471931 (D. Colo. Dec. 3, 2025). Thus, "[s]tate policies or regulations will not create the basis for a liberty interest in the conditions of confinement so long as they do not 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *DiMarco*, 473 F.3d at 1339 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Steffey v. Orman*, 461 F.3d 1218, 1221-23 (10th Cir. 2006) (stating that "property interest claims by prisoners are . . . to be reviewed under *Sandin's* atypical-and-significant-deprivation analysis,"

and finding that an inmate did not have a protected property interest in a money order sent to him by another prisoner's mother) (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999)).

Here, AR 850-06 requires inmates who are moved—or "regressed"—to higher-security facilities because of their failure to abide by rules in less-restrictive institutions to forego personal property that is deemed "contraband" in the higher-security prison. The related provision in AR 300-06 permits the institution to dispose of these items if the inmate lacks the funds to mail them out. As the Tenth Circuit Court of Appeals has confirmed, these types of property-focused regulations do not impose an atypical, significant hardship on inmates in relation to the ordinary incidents of prison life.

The situation in *Cosco* illustrates the point. There, inmates who had been permitted to possess "hobby" materials in their cells until the murder of a correctional officer prompted a change in that policy, sued on grounds that the confiscation of those items constituted a deprivation of property without due process. *Cosco*, 195 F.3d at 1223-24. The Tenth Circuit disagreed, finding that "[t]he regulation of type and quantity of individual possession in cells is typical of the kinds of prison conditions that the Court has declared to be subject to the new analysis set forth in *Sandin,*" and that "we cannot say that the new regulations promulgated in this case present the type of atypical, significant deprivation of their existing cell property privileges in which a State might create a property interest." *Id.* at 1224 (citation modified); *see also, e.g.*, *Steffey*, 461 F.3d at 1223 ("Decisions from this and other circuits demonstrate that the seizure and forfeiture of currency as contraband is a typical incident of prison life, and is not a significant property interest deprivation.").

Because Mr. Woo's pleading fails to plausibly allege the existence of a protected

property interest with which any CDOC official has interfered, the court is unable to reasonably infer from his pleading that the confiscation of disallowed property attendant on his placement in a more restrictive prison effectuated an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Nor has he provided facts sufficient to show that the deprivation of these confiscated items—headphones, radios, a television remote, earbuds and other items of that type, *see* ECF No. 75 ¶ 3—posed an unusual hardship for him *See Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2011 WL 940803, at *6, 9 (D. Colo. Mar. 16, 2011) (finding no due process violation where an inmate failed to provide evidence of unusual hardship attendant on the destruction of a manuscript consisting of "thousands of pages of original research, art, and creative writing"). And because Mr. Woo has failed to allege that he endured an atypical, significant hardship, he has not plausibly shown that he was entitled to process.

The court is respectfully unpersuaded by Mr. Woo's counterarguments. He asserts that the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled by Daniels v. Williams*, 474 U.S. 327 (1986), establishes that inmates have a cognizable property interest in items purchased from the prison canteen. ECF No. 103 at 4-5. However, in *Parratt*, the existence of a property interest under Nebraska law was never at issue. 451 U.S. at 529 n.1 (noting that neither party had "contended that under Nebraska law respondent does not enjoy a property interest in the hobby materials here in question"). Likewise, Mr. Woo's reliance on the Tenth Circuit's decision in *Searcy v. Simmons*, 299 F.3d 1220 (10th Cir. 2002), is misplaced. ECF No. 103 at 5. That case recognized that inmates have a property interest in their possessions under Kansas law. *Searcy*, 299 F.3d at 1229 (citing *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir.

2002)), and Mr. Woo points to no Colorado authority that establishes such an interest.[6]

Mr. Woo thus has not alleged a constitutionally protected interest sufficient to trigger procedural due process protections based on the confiscation of property that constituted contraband at a higher-security prison to which he was "regressively" transferred. The court therefore turns to the question whether to recommend dismissal of the claim with or without prejudice. Although a dismissal of a pro se complaint under Rule 12(b)(6) is typically without prejudice, "[a] dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Barnes v. Harris*, 783 F.3d 1185, 1197 (10th Cir. 2015) (quotation omitted).

Here, Mr. Woo has been given multiple opportunities to articulate a plausible factual predicate for his procedural due process claim, and he has not done so. The circumstances surrounding the confiscation of his property upon his regression to a higher-security institution are unalterable. Longstanding Supreme Court and Tenth Circuit precedent confirms that these facts do not plausibly indicate the imposition of an "atypical and significant hardship on [Mr. Woo] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In light of this fixed documentary record and the established precedent by which it must be scrutinized, Mr.

---

[6] Mr. Woo asserts that *Daniels* and *Hillside Community Church v. Olsen*, 58 P.3d 1021 (Colo. 2002), establish an inmate's property interest in personal items. ECF No. 103 at 4-5. However, both of those cases merely describe the holding in *Parratt*; neither provides independent authorization for recognizing a property interest in an inmate's personal possessions. *See Daniels*, 474 U.S. at 328; *Hillside Community Church*, 58 P.3d at 1029-30.

Woo has no path to amendment that would allow him to plead a violation of his procedural due process rights on these grounds. Importantly, too, this court has "explain[ed] the pleading's deficiencies" to Mr. Woo—including its failure to satisfy the atypical-and-significant-hardship standard—"so that [Mr. Woo could] submit an adequate complaint." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *see* ECF No. 11 at 11-13 (explaining the standards for pleading a viable procedural due process claim, including the need to articulate facts demonstrating an atypical and significant hardship, and specifically informing Woo that he "fails to allege specific facts that demonstrate he has been deprived of a constitutionally protected liberty or property interest without due process"). Notwithstanding this explanation, and a similar delineation of the deficiencies in this claim (and others) in a motion to dismiss a prior version of Mr. Woo's pleading, *see* ECF No. 51 at 5-9, he still has failed to state a plausible claim.

Because Mr. Woo cannot prevail on the confirmed facts that inform, and necessarily will continue to inform, this claim, "it would be futile to give [him] an opportunity to amend." *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (quoting *Gee*, 627 F.3d at 1195). After multiple opportunities to amend, and a comprehensive advisement by this court of the deficiencies in his pleading, Mr. Woo is still not "close to stating a claim," nor is he merely "missing some important element that may not have occurred to him." *Gee*, 627 F.3d at 1195 (quotation omitted). The court therefore respectfully **RECOMMENDS** that the procedural due process subclaim within Claim One be **DISMISSED with prejudice**.

***Coffee and tea bags confiscated by Ms. De La Cruz.*** The second piece of Mr. Woo's procedural due process claim rests on Ms. De La Cruz's confiscation of his coffee and tea bags without giving him a "contraband slip." ECF No. 75 ¶ 5. This also cannot plausibly be

countenanced as a deprivation amounting to "an atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

The Tenth Circuit has made clear that "a prison regulation governing what prisoners may possess in their cells will create a protected liberty or property interest *only* if the deprivation of the interest meets the *Sandin* test, imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Robinson v. Doe*, 761 F. App'x 855, 857 (10th Cir. 2019) (holding that "[t]he circumstances surrounding [an inmate's] inability to get his music tablet adjusted do not involve such a significant departure from normal prison conditions as to create a liberty or property interest protected by the Fourteenth Amendment's Due Process Clause") (emphasis added); *see also Cosco*, 195 F.3d at 1223-24 (recognizing that a "regulation of type and quantity of individual possession in cells is typical of the kinds of prison conditions that the Court has declared to be subject to the new analysis set forth in *Sandin*," and holding that regulations limiting the amount of hobby and legal materials inmates could keep in their cells did not implicate a property interest); *see also Sandin*, 515 U.S. at 481-82 (explaining that prison regulations are "primarily designed to guide correctional officials in the administration of a prison," rather than "confer rights on inmates"). As these cases make clear, "prison officials are granted broad discretion in deciding how much and what kinds of personal property inmates can possess, and in the absence of evidence that the [prison's] policies applicable to the Plaintiff are so extreme and parsimonious that they fall outside the scope of typical prison property rules, *the inquiry ends there*." *Georgacarakos*, 2011 WL 940803, at *9 (emphasis added).

Mr. Woo's inability to have immediate access to personal stores of coffee and tea from within the confines of his prison cell does not plausibly establish an atypical or significant

hardship in relation to the ordinary incidents of prison life, and he therefore has not alleged the existence of a protected property interest. *See, e.g.*, *Than v. McKibbin*, No. 20-cv-00766-WJM-NRN, 2020 WL 13850228, at *5 (D. Colo. Dec. 30, 2020) (finding that the confiscation of an inmate's DVD player, nail clippers, and laundry ties did not constitute an atypical or significant hardship, and that the inmate had "not plausibly alleged the deprivation of a protected liberty or property interest" on that basis); *Smith-Bey v. Reid*, No. 08-cv-01356-1356-DME-KLM, 2009 WL 721748, at *5 (D. Colo. Mar. 13, 2009) (inmate's inability to watch his television in his cell "constituted neither an atypical nor a significant hardship in relation to the ordinary incidents of prison life"). Moreover, to the extent Mr. Woo attempts to claim a violation of his constitutional rights based on Ms. De La Cruz's alleged failure to give him a "contraband slip" when she confiscated the coffee and tea—as presumably required by a prison policy—that effort is unavailing. A prison official's noncompliance with a prison regulation does not violate the Constitution unless the prison official's behavior fails to conform to a constitutional standard. *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (holding that a prisoner who complains about a violation of a prison policy must demonstrate that the policy violation amounted to a violation of the Constitution itself: "It is [the prisoner's] burden to establish that the Constitution, not just a policy, is implicated.").

Mr. Woo's pleading does not plausibly demonstrate that Ms. De La Cruz's alleged failure to comply with a technical policy requirement to give him a piece of paper recording that she confiscated his coffee and tea imposed on him a burden out of proportion to the ordinary incidents of prison life. *See Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation.")

(citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.")). No action of sufficient consequence to implicate the Constitution may reasonably be discerned in Mr. Woo's allegations here.[7]

As a result, the court finds that Ms. De La Cruz is entitled to qualified immunity on the procedural due process subclaim within Claim One.[8] In so finding, the court notes its disagreement with Mr. Woo, who contends that Ms. De La Cruz has failed to adequately raise the defense. ECF No. 121 at 6-7. Ms. De La Cruz's motion to dismiss provides an analysis with citations to the governing law on qualified immunity, coupled with a detailed explanation of why Mr. Woo's pleading fails both prongs of the qualified immunity test. *See* ECF No. 113 at 9-11;

---

[7] Even if Mr. Woo had alleged that he possessed a protected property interest in any of his confiscated property, he has not pleaded that he lacked constitutionally sufficient procedures to address the purported deprivation. "[A]n unauthorized intentional deprivation of property does not constitute a violation of the procedural requirements of the Due Process Clause . . . if a meaningful postdeprivation remedy for the loss is available." *Coburn v. Wilkinson*, 700 F. App'x 834, 837 (10th Cir. 2017) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). Here, Mr. Woo has alleged that he "completed CDOC's three-step grievance process" for all claims he brings in this case. ECF No. 75 ¶ 19. While Mr. Woo characterizes that process as "meaningless" and a "sham" because some unidentified person told him that CCF employed practices designed "to foreclose all litigation . . . by arbitrarily declaring grievances not exhausted," he does not allege that with respect to any of *his* grievances relevant to the instant lawsuit, prison officials "impeded [his] access to the grievance process[.]" *Id.* The alleged inadequacy of the process appears to reduce to Mr. Woo's dissatisfaction with the outcome, but "'[i]nmate grievance procedures can be an adequate postdeprivation remedy' even if they ultimately are denied." *Harrell v. Ross*, No. 23-8007, 2024 WL 389407, at *3 (10th Cir. Feb. 2, 2024) (quoting *Requena*, 839 F.3d at 1212)).

[8] Because Mr. Woo has failed to plead a constitutional violation, Ms. De La Cruz is entitled to qualified immunity for that reason alone, and the court need not examine the clearly established law prong of the analysis. *Holmes*, 830 F.3d at 1134-35.

ECF No. 127 at 4-6. *See Detreville v. Gurevich*, No. 24-1427, 2025 WL 1874587, at *4 (10th Cir. July 8, 2025) (reversing the district court's holding that the defendant waived qualified immunity because the defendants (1) stated the standard for qualified immunity, (2) explained the requirement for the plaintiff's showing of an element of the constitutional claim, and (3) argued why the plaintiff could not make that showing); *cf. Berryman v. Niceta*, 143 F.4th 1134, 1141 (10th Cir. 2025) (finding that the mere recitation of the qualified immunity legal standard, paired with "a single sentence, without citation to any legal authority," and the statement "that no clearly established law demonstrates these facts give rise to personal liability," was inadequate to raise the defense). In contrast with *Berryman*, Ms. De La Cruz (and the other CDOC Defendants sued in their individual capacities) do not rest their claim of entitlement to qualified immunity on a one-sentence invocation of the defense.

The court therefore respectfully **RECOMMENDS** that the procedural due process subclaim brought against Ms. De La Cruz be **DISMISSED with prejudice** because she is entitled to qualified immunity.[9]

**b. Substantive Due Process**

As support for the substantive due process component of Claim One, Mr. Woo asserts that the Administrative Regulations pursuant to which his property was confiscated when he was

[9] *See, e.g.*, *Lamle v. Eads*, 134 F.4th 562, 567 (10th Cir. 2025) (affirming "dismissal with prejudice" because defendant was "entitled to qualified immunity on the claim for damages"); *Encinias v. New Mexico Corr. Dep't*, No. 23-2052, 2024 WL 4380477, at *6 (10th Cir. Oct. 3, 2024) (affirming district court's order dismissing plaintiff's claim with prejudice on the basis of qualified immunity); *Vreeland v. Olson*, No. 20-cv-02330-PAB-SKC, 2021 WL 4237269, at *5 n.7 (D. Colo. Sept. 16, 2021) (dismissing claims against defendants "with prejudice because they are entitled to qualified immunity").

regressed to CSP is that "they interfere with rights 'implicit in the concept of ordered liberty' and constitute 'arbitrary, wrongful government actions'" because the CDOC can "arbitrarily and wrongfully forfeit any inmate property . . . simply by regressing the inmate." ECF No. 75 ¶ 12. Mr. Woo, however, has not alleged that the implementation of these regulations has infringed his rights in such a way as to implicate substantive due process.

"[T]he touchstone of due process is protection of the individual against arbitrary action of government." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quoting *Wolff*, 418 U.S. at 558). In addition to guaranteeing fair procedures, the Due Process Clause of the Fourteenth Amendment "'cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them.'" *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1181 (10th Cir. 2009) (quoting *Lewis*, 523 U.S. at 840). "[T]he Supreme Court recognizes two types of substantive due process claims: (1) claims that the government has infringed a 'fundamental' right, . . . and (2) claims that government action deprived a person of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience." *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721-22 (1997); citing *Lewis*, 523 U.S. at 846; *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018)). The Tenth Circuit applies "the fundamental-rights approach when the plaintiff challenges *legislative* action, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious *executive* action." *Halley*, 902 F.3d at 1153; *see also Woodard*, 912 F.3d at 1300. Mr. Woo challenges as arbitrary executive conduct in the form of enacting and enforcing prison regulations that allegedly deprive him of property interests, and the shocks-the-conscience standard is appropriately applied here.

Mr. Woo's allegations do not plausibly demonstrate that compelling the forfeiture of certain property upon an inmate's regression to a higher-security institution amounts to conscience-shocking conduct. Indeed, Mr. Woo acknowledges that the regulation of inmate property does *not* shock the conscience, but argues that it is nevertheless an arbitrary policy violative of substantive due process. ECF No. 103 at 8 (citing *Browder v. City of Albuquerque*, 787 F.3d 1076 (10th Cir. 2015)). But when it comes to executive action, "arbitrariness" is only of constitutionally-significant import when it rises to the level of "conscience shocking": "When analyzing executive action, 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" *Onyx Props. LLC v. Bd. of Cnty. Comm'rs of Elbert Cnty.*, 838 F.3d 1039, 1048-49 (10th Cir. 2016) (quoting *Lewis*, 523 U.S. at 846). Intentional or reckless conduct on the part of a government official is not enough; "[t]he actions 'must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'" *Id.* at 1049 (quoting *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 513 (10th Cir. 2011)).

The well-pleaded facts here reflect nothing approaching conscience-shocking conduct demonstrating an intrusion on Mr. Woo's substantive due process rights. Rather, as is apparent from the face of the regulations at issue here, prison officials have rationally determined that certain types of property—even if tolerated in less-restrictive institutions—cannot safely be introduced into a higher-security environment by certain inmates. *See* AR 850-06 § IV(B)(4). In this context, Mr. Woo has failed to allege that the regulations at issue "'lack[] 'a rational relation to legitimate penological interests.'" *Sperry v. Werholtz*, 321 F. App'x 775, 778 (10th Cir. 2009) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("when a prison regulation impinges on inmates' constitutional rights, the regulation is

valid if it is reasonably related to legitimate penological interests"); *Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) ("Prisoners are entitled to substantive due process; but substantive-due-process rights available to free persons may be denied to prisoners if the denial 'bear[s] a rational relation to legitimate penological interests.'") (quoting *Overton,* 539 U.S. at 132)); *Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2010 WL 1291833, at *23 (D. Colo. Mar. 30, 2010) (recognizing the existence of a "legitimate penological interest in maintaining prison security by preventing the entry of contraband"). The court properly gives substantial deference to this professional judgment call by prison administrators, who carry a "significant responsibility for defining the legitimate goals of [the prison] and for determining the most appropriate means to accomplish them." *Overton*, 539 U.S. at 132.

The facts alleged here do not plausibly indicate the existence of "conduct intended to injure [Mr. Woo] in some way *unjustifiable by any government interest*," and thus he has fallen short of identifying an official action that would rise to the conscience-shocking level. *Lewis*, 523 U.S. at 849 (emphasis added); *see also, e.g.*, *Kelley-Lomax v. City of Chicago, Ill.*, 49 F.4th 1124, 1125 (7th Cir. 2022) (concluding that destruction of inmate property after passage of a property retrieval window did not implicate a fundamental right for substantive due process purposes); *Norfleet v. Miller-Pickering*, No. 18-cv-0564-DRH, 2018 WL 3391016, at *7 (S.D. Ill. July 12, 2018) (recoupment of expenses from plaintiff's prison trust account did not shock the conscience); *Brown v. Colo. Dep't of Corr.*, No. 05-cv-01691-EWN-MEH, 2006 WL 2621668, at *4 (D. Colo. Sept. 12, 2006) (deducting funds from an inmate account pursuant to an improper order of restriction was not conscience shocking, "particularly when Defendants['] actions are for the purpose of furthering the state's interest in seeking restitution from Plaintiff

for his criminal conduct"); *Larkin v. Werholtz*, No. 07-3325-SAC, 2008 WL 852126, at *4 (D. Kan. Mar. 28, 2008) (recognizing that "[l]imitations on inmates' use and receipt of money while in prison are ordinary incidents of prison life and are well within the bounds of what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction"); *cf. Sperry*, No. CIV.A. 04-3125-CM, 2008 WL 4216110, at *3 (D. Kan. Sept. 12, 2008) (prison regulation requiring that prison wages be placed in mandatory savings account did not shock the conscience), *aff'd*, 321 F. App'x 775 (10th Cir. 2009).

The court cannot conclude, based on the well-pleaded facts, that Mr. Woo has alleged conscience-shocking conduct. Nor can the court identify a viable path to Mr. Woo's repleading such a claim so as to render it plausible, given the unalterable factual framework on which he has chosen to construct this cause of action. *See* ECF No. 11 at 12-13 (this court's explanation to Woo of the standard for determining whether there has been a substantive due process violation and how his factual allegations failed to state a substantive due process claim). The court therefore respectfully **RECOMMENDS** that the substantive due process component of Claim One be **DISMISSED with prejudice**.

#### c. Equal Protection

As support for the equal protection component of Claim One, Mr. Woo claims to be a member of two disparately-treated classes: inmates who are indigent and inmates who have been "regressed" because of their behavior to a higher-security institution. ECF No. 75 ¶ 13. As to the first category, Mr. Woo asserts that the CDOC regulations treat indigent inmates differently by leaving them "no option but forfeiture." *Id.* With regard to the second, per Mr. Woo, regressed inmates are treated differently because they cannot retain property in the same manner as

progressed and laterally-placed inmates who reside in the same institution. *Id.* According to Mr. Woo, this renders the regulations "arbitrary, irrational, and unrelated to any legitimate penological interest." *Id.* ¶ 14.

To begin with the governing legal principles, "[d]ifferent types of equal protection claims call for different forms of review. A claim that a state actor discriminated on the basis of a suspect (e.g., race), quasi-suspect (e.g., gender), or a non-suspect classification calls for strict, intermediate, or rational basis scrutiny, respectively." *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011). In each instance, the plaintiff must make "a threshold showing that they were treated differently from others who were similarly situated to them." *Id.* at 1173. Individuals are "similarly situated" only if they are alike "in all relevant respects." *Requena*, 893 F.3d at 1210. "[A]lthough this is not a precise formula, it is nonetheless clear that similarly situated individuals must be very similar indeed." *Ebonie S. ex rel. Mary S. v. Pueblo Sch. Dist. 60*, 819 F. Supp. 2d 1179, 1189 (D. Colo. 2011) (quoting *United States v. Moore*, 543 F.3d 891, 896-97 (7th Cir. 2008)).

As a threshold matter, Mr. Woo has not alleged that he was treated differently from an inmate like him in all relevant respects, but who was allowed to keep contraband property at CSP after being regressed to that institution or who was absolved of the obligation to bear the costs of shipping that contraband property outside the prison. Regardless, even if the court were to assume that Mr. Woo is similarly situated to other inmates who were treated differently with regard to the application of the CDOC Administrative Regulations governing the disposition of property, his equal protection claim fails.

Here, the purported classes of "indigent" and "regressed" inmates are not entitled to

heightened protection under the Equal Protection Clause. As the Tenth Circuit long ago made clear, "neither prisoners nor indigents constitute a suspect class warranting strict scrutiny review." *Harrison v. Benty Cnty. Corr. Facility*, 24 F. App'x 965, 967 (10th Cir. 2001) (finding that "the challenged policy in this case need only bear a rational relationship to legitimate government ends"). The Colorado Court of Appeals recently emphasized this exact point in a case brought by Mr. Woo. *See Woo v. Baez*, No. 21CA0343, 522 P.3d 739, 748 (Colo. App. 2022) ("[N]either prisoners nor indigents constitute a suspect class for equal protection analysis purposes.") (quoting *Collins v. Jaquez*, 15 P.3d 299, 303 (Colo. App. 2000)). The court therefore examines Mr. Woo's equal protection claim pursuant to the deferential rational-basis standard.

Courts "accord a strong presumption of validity to [government actions] that neither involve fundamental rights nor proceed along suspect lines." *City of Herriman v. Bell*, 590 F.3d 1176, 1194 (10th Cir. 2010) (citing *Heller v. Doe,* 509 U.S. 312, 319-21 (1993)); *see Petrella v. Brownback*, 787 F.3d 1242, 1266 (10th Cir. 2015) ("Because a classification subject to rational basis review 'is presumed constitutional, the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'") (quoting *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012)). "In the context of a motion to dismiss under 12(b)(6), this court accepts all of the allegations in the complaint as true and then considers these 'facts' according to the deferential rational basis standard." *Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007). "To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.* (quotation omitted). This, Mr. Woo has not done.

Mr. Stancil and Ms. Sandoval assert that there is a legitimate penological interest in

maintaining prison security by regulating contraband, ECF No. 87 at 8, and Supreme Court and Tenth Circuit precedent confirm that point. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) ("The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security."); *Doe v. Heil*, 781 F. Supp. 2d 1134, 1140 (D. Colo. 2011) ("Legitimate penological interests include rehabilitation, deterrence and security."), *aff'd*, 533 F. App'x 831 (10th Cir. 2013); *Khan v. Barela*, 808 F. App'x 602, 612 (10th Cir. 2020) (a prison has a legitimate penological interest in discovering contraband). As Mr. Woo has acknowledged, he was regressed to CSP, a higher-security institution, because he violated CDOC rules by repeatedly refusing to accept a cellmate, and in that more restrictive institution, some of his property was deemed contraband. ECF No. 75 ¶¶ 1, 6.

Because the Supreme Court, as reflected in *Turner v. Safley* and its progeny, "allows prohibitions and restrictions that are reasonably related to legitimate penological interests, [an inmate] must include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests." *Gee*, 627 F.3d at 1187-88. While an inmate need not "identify every potential legitimate interest and plead against it," *id.* at 1188, he nevertheless must "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Id.* Meeting this standard may require the recitation of "facts that might well be unnecessary in other contexts." *Id.* at 1185.

Mr. Woo's pleading fails to meet these standards. He has not alleged facts plausibly demonstrating that the CDOC acted irrationally in deciding that an inmate who engages in rule-

breaking behavior in a lower-security facility—and thus earns a higher classification score and placement in a higher-security institution—poses greater risks to institutional security than an inmate who is incarcerated in the higher-security institution for different reasons. It further lies within the bounds of rational decisionmaking for CDOC to determine that the need to regulate contraband applies with greater force in the case of inmates assigned to CSP as a result of a regressive transfer. *See Hill*, 75 F. App'x at 720 (in upholding trial court's dismissal of an inmate's equal protection claim, considering the inmate's prison history in concluding that there was "a rational basis for the difference in hearing opportunities between [the plaintiff's] classification and another inmate's disciplinary assignment" to the same prison). Likewise are the mailing costs for contraband property imposed on regressed inmates rationally related to the legitimate penological interest in the state "recouping the costs of incarceration[.]" *Tijerina v. Patterson*, 507 F. App'x 807, 810 (10th Cir. 2013) (finding that "[t]he state's interest in recouping the costs of incarceration is rationally related" to the requirement that inmates pay a co-pay for medical care) (citing *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000) (denying equal protection challenge to state prison fee system)).

Because the classifications imposed in Administrative Regulations 850-06 and 300-06 are rationally related to legitimate state interests, Mr. Woo has failed to allege a violation of his equal protection rights. This court previously has advised Mr. Woo concerning the standards that must be met to state a viable equal protection claim, *see* ECF No. 11 at 17-18, and he has been allowed to submit multiple complaints in this matter. However, the "strong presumption of validity" afforded to the prison regulations Mr. Woo challenges, *see Heller*, 509 U.S. at 319—and the set factual record on which his claim is based—indicate that no amended pleading could

negate CDOC's rational bases for its determinations. Permitting Mr. Woo to amend his complaint yet again would be a futile endeavor. The court therefore respectfully **RECOMMENDS** that the equal protection component of Claim One be **DISMISSED with prejudice**.

#### d. Fifth Amendment Takings

Mr. Woo claims that CDOC's contraband policy disallowing him from keeping certain property as a result of a regressive transfer, and CDOC's allegedly giving or loaning that property to other inmates, effects a taking of private property without just compensation in violation of the Fifth Amendment. ECF No. 75 ¶ 15. Mr. Stancil and Ms. Sandoval argue that the confiscation of Mr. Woo's property is not a taking for "for public use" because it was done pursuant to the State's police power to regulate contraband within its prisons—and not pursuant to the power of eminent domain. ECF No. 87 at 10-11. The court agrees that Mr. Woo has failed to plausibly allege that he sustained a violation of his rights under the Fifth Amendment Takings Clause.

The Takings Clause, made applicable to the states through the Fourteenth Amendment, provides that the government may not take private property for public use without just compensation. U.S. Const. amend. V. As a preliminary matter, the court finds that Mr. Woo has failed to satisfy a fundamental requirement for articulating a cognizable takings claim: "a plaintiff must, as a threshold matter, establish the existence of the property interest allegedly taken." *Cecil v. Keller*, No. 7:23-cv-00310, 2025 WL 918165, at *7 (W.D. Va. Mar. 25, 2025), *aff'd*, No. 25-6293, 2025 WL 2784842 (4th Cir. Sept. 30, 2025) (citing *Snyder & Assocs. Acquisitions LLC v. United States*, 133 Fed. Cl. 120, 124-25 (Fed. Cl. 2017) ("When a party

alleges that his property has been taken without compensation, the Court applies a two-part test. It first determines whether a plaintiff has a cognizable property interest . . . if the plaintiff does not show the existence of a cognizable property interest, 'the court's task is at an end.'")); *see also Grove v. Groome*, 817 F. App'x 551, 557 (10th Cir. 2020) (observing that the Takings Clause is triggered "only if [Plaintiff] had a protected property interest. He doesn't, so this claim was properly dismissed."); *Lake Town Towing v. Utah*, No. 2:23-cv-00818-JNP-CMR, 2024 WL 4333416, at *1 (D. Utah Sept. 27, 2024) ("For Plaintiffs' federal claims under the Takings Clause and the Due Process Clauses to succeed, Plaintiffs must identify a federally protected property interest in the County towing-rotation system. Plaintiffs have not done so."), *reconsideration denied*, 2025 WL 1880481 (D. Utah July 8, 2025); *Hill v. Vanderbilt Cap. Advisors, LLC*, 834 F. Supp. 2d 1228, 1264 (D.N.M. 2011) ("The threshold question in a Takings Clause claim is whether the plaintiff has a cognizable property interest.").

As the court explained in finding Mr. Woo's procedural and substantive due process claims inadequately pled, *see* §§ I(B)(1)(a), (b), *supra*, Mr. Woo has failed to plead that he possessed a protected property interest in the electronics and other personal items that were confiscated upon his regression to CSP. This pleading defect likewise dooms his takings claim. But even if Mr. Woo had alleged that he had a cognizable property interest in the items deemed contraband at the higher-security CSP, he has failed to plead sufficient facts to state the necessary second component of a takings claim: that the CDOC's taking of his property served a public purpose.

Only those whose personal property has been taken for public use are entitled to compensation under the Takings Clause. *Lawmaster v. Ward*, 125 F.3d 1341, 1351 (10th Cir.

1997) (holding that plaintiff failed to state a Fifth Amendment violation because he did not "allege any facts showing how his property was taken for public use"). A compensable taking may occur when the government acts pursuant to its power of eminent domain, but not when the government acts pursuant to its police power. *Bennis v. Michigan*, 516 U.S. 442, 452 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."); *Lech v. Jackson*, 791 F. App'x 711, 717 (10th Cir. 2019) ("[W]hen the state acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a taking for purposes of the Takings Clause.").

In accordance with these principles, property seized or destroyed pursuant to prison regulations is done pursuant to the government's police power and does not amount to a taking. *See, e.g.*, *Rueb*, 2025 WL 3478322, at *5-6 (where the seizure of an inmate's "bartered-for property occurred pursuant to CDOC policy, which prohibits inmates from exchanging or bartering property without authorization and designates such items as contraband, . . . [s]uch enforcement of internal security and contraband regulations plainly fall within the State's police power"); *Mallet-El v. United States*, No. 21-cv-1263, 2021 WL 5833215, at *5 (Fed. Cl. Dec. 9, 2021) (finding that Federal Bureau of Prisons policies limiting the types of personal property inmates were allowed to possess, and defining procedures for identifying and handling contraband, "involve matters of the Government's police power, not takings that require just compensation under the Fifth Amendment"); *Watson v. Rozum*, No. CIV.A. 12-35J, 2012 WL 5989202, at *8 (W.D. Pa. Oct. 29, 2012) (holding that confiscation of inmate's contraband radio pursuant to prison regulations was not a "taking" under the Fifth Amendment and recommending

that the inmate's Takings Clause claim be dismissed with prejudice), *report and recommendation adopted*, 2012 WL 5989245 (W.D. Pa. Nov. 29, 2012). Neither does the confiscation of Mr. Woo's property here, which occurred pursuant to CDOC policies for managing contraband following his regression to CSP, plausibly evince the existence of a "taking" for which the State must compensate him.

Mr. Woo's arguments do not overcome these pleading deficits. He asserts that the court ought to find he has sufficiently alleged a "taking" of his confiscated property for public use at CSP because, back in April 2021, when he was incarcerated at a different institution, staff replaced his lost television remote with a used remote that had "the previous owner's name scratched out." ECF No. 75 ¶ 15; *see* ECF No. 103 at 12 (arguing that "it is highly unlikely that CDOC destroys forfeited property as it purports to do under AR 300-06(IV)(Q)(6)(d)(1), rather than retaining it for public use by other inmates"). However, no reasonable inference of an improper taking of Mr. Woo's contraband property over a year later, at a different institution, may be drawn from the fact that he was given a used remote with another inmate's name on it at CCF in April 2021. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Further, Mr. Woo's surmise that it is "highly unlikely" CDOC has not converted contraband property to the "public use" of other inmates—and that, by reselling inmates this previously-purchased property, "CDOC stands to gain millions," ECF No. 75 ¶ 75—are conclusory assertions, unsupported by well-pleaded facts, and not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681.

Even if the court were to countenance Mr. Woo's unsupported hypothesis that CDOC

converted his contraband property to a public use by distributing it to other inmates, that would not rectify his failure to plead that he possessed a protected property interest in those items in the first instance. That is a fatal pleading defect Mr. Woo cannot overcome, because it rests on a confirmed factual record identifying the type of property, the manner in which it was acquired, and the circumstances under which Mr. Woo was compelled to surrender it. Because the takings component of Claim One fails as a matter of law, the court respectfully **RECOMMENDS** that it be **DISMISSED with prejudice**.

#### e. Cruel and Unusual Punishment and Excessive Fines Under the Eighth Amendment

Mr. Woo claims that CDOC's policies for handling contraband violate the Eighth Amendment's prohibitions on cruel and unusual punishment and excessive fines. ECF No. 75 ¶ 16. Mr. Woo does not differentiate between these claims; both are based on the same grievances described elsewhere in his pleading: (1) the contraband policies are punitive and arbitrary because they are applied only to regressed and indigent inmates like Mr. Woo; (2) the procedures are predatory because CDOC allegedly benefits financially from forfeitures by re-using or reselling the confiscated items; and (3) CDOC's grievance process is a "sham procedure" and a "meaningless post-deprivation remedy" because grievances—or, at least, Mr. Woo's grievances—are invariably denied. *Id.* ¶¶ 16-21.

***Cruel and unusual punishment.*** To begin with the cruel and unusual punishment component of the claim, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation omitted). An Eighth Amendment claim requires both a showing that the challenged conditions are sufficiently and objectively severe and a showing that

the defendant prison officials were subjectively aware of "a substantial risk of serious harm to an inmate" and yet voluntarily acted, or failed to act, despite that awareness. *Farmer*, 511 U.S. at 828, 842.

Conditions of confinement may implicate the objective component if they are "sufficiently serious" in that they deprive the inmate of the "minimal civilized measure of life's necessities": adequate food, clothing, shelter, medical care, and safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, restrictive and even harsh conditions do not necessarily violate the Eighth Amendment. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). The subjective component requires that the prison official have a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 834.[10] Mr. Woo has alleged neither the objective nor the subjective elements so as to state a viable conditions-of-confinement claim under the Eighth Amendment.

As for the objective prong, the alleged deprivation here rests on Mr. Woo's being compelled to surrender upon his regression to CSP headphones, a radio, a remote control, a hot pot, mustache scissors, sporks, and similar items that he had acquired from the canteen. ECF No.

[10] Mr. Woo must allege both the objective and subjective elements to state an Eighth Amendment claim against CDOC officials sued in their official capacities. *See, e.g.*, *Oakley v. Williams*, No. 20-cv-01336-CMA-NYW, 2021 WL 4170464, at *2 (D. Colo. Sept. 14, 2021); *Mostafa v. Barr*, No. 20-cv-00694-PAB-NYW, 2021 WL 330167, at *7 (D. Colo. Jan. 30, 2021) (recognizing that when suing defendant prison officials in their official capacities only, the inmate "must allege facts from which it can be inferred that the defendant-officials were 'knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so'") (quoting *Farmer*, 511 U.S. at 846).

75 ¶ 3. Mr. Woo's inability to possess these things falls markedly short of objectively describing a deprivation of the "minimal civilized measure of life's necessities." *See Rhodes*, 452 U.S. at 347; *see also Rocha v. Zavaras*, No. 10-cv-00357-CMA-MEH, 2011 WL 1158003, at *10 (D. Colo. Feb. 23, 2011) (finding that "[s]hower shoes, photos, utensils, a sewing kit, and nail clippers are not items necessary to essential human needs"), *report and recommendation adopted*, 2011 WL 1154636 (D. Colo. Mar. 29, 2011); *Gillihan v. Shillinger*, 872 F.2d 935, 937, 941 (10th Cir. 1989) (holding that the deprivation of "cigarettes, coffee, and personal hygiene items," while "restrictive and even harsh, . . . did not amount to the infliction of cruel and unusual punishment"), *overruled on other grounds by Clark v. Wilson*, 625 F.3d 686 (10th Cir. 2010); *Martinez v. Milyard*, No. 10-cv-01627-PAB-BNB, 2010 WL 3632196, at *2 (D. Colo. Sept. 9, 2010) (confiscation of inmate's personal property, including a radio, fan, lamp, hot pot, and sweat outfits upon his placement in segregation did "not demonstrate an injury that is sufficiently serious because 'extreme deprivations are required to make out a conditions-of-confinement claim'") (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)), *aff'd*, 407 F. App'x 297 (10th Cir. 2011). Indeed, to find that Mr. Woo's allegations plausibly indicate the existence of an objectively serious deprivation would render the term "minimal civilized measure of life's necessities" meaningless and eviscerate its force and effect.

Mr. Woo has no persuasive rejoinder to the point that his allegations do not plausibly indicate his subjection to an extreme deprivation. He argues that *Hudson v. Palmer* prohibits "trampling over inmates' property rights," ECF No. 103 at 14, but that case evaluated whether a cell search violated an inmate's Fourth Amendment rights, not whether the confiscation of his personal property violated the Eighth Amendment. *See* 468 U.S. 517, 530 (1984) (concluding

that "prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells"). While the Supreme Court recognized that the Eighth Amendment could provide a remedy for an offense against an inmate's property rights, *id.*, it did not suss out what would be required to establish such a claim. *See generally id.* That was left to later cases, including *Farmer*. And pursuant to that binding authority, Mr. Woo has failed to plead facts plausibly establishing the objective component of an Eighth Amendment claim.

Because Mr. Woo has failed to allege facts from which it can be inferred that the defendant-officials here were "knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so," *Farmer*, 511 U.S. at 846, that disposes of his Eighth Amendment claim. However, it bears noting that the well-pleaded facts also fail to plausibly demonstrate that either Mr. Stancil or Ms. Sandoval possessed a "sufficiently culpable state of mind." *Id.* at 834. Mr. Woo's pleading contains no allegations that would allow this court reasonably to infer that either of these officials personally "drew the inference" that the contraband policies at issue here put Mr. Woo at substantial risk of serious harm. *Id.* at 838.

This court previously laid out for Mr. Woo the elements he would need to plead in order to allege a plausible Eighth Amendment claim and provided citations to relevant Supreme Court and Tenth Circuit authority. ECF No. 11 at 18. Even so, Mr. Woo has not alleged facts that meet the requisite elements, and it is apparent that the deprivation of which he complains—a prohibition on possessing certain non-essential personal property in a high-security institution to which he was regressed based on his conduct—can never reasonably be construed as a denial of

the minimal civilized measure of life's necessities. Mr. Woo has defined the parameters of his conditions-of-confinement claim, and permitting him to amend to reassert this claim would be an exercise in futility. The court therefore respectfully **RECOMMENDS** that the cruel-and-unusual-punishment prong of Claim One be **DISMISSED with prejudice**.

***Excessive fines.*** The court next considers that aspect of Mr. Woo's claim asserting that the CDOC regulations governing the disposition of certain property for regressed inmates violates the Eighth Amendment's proscription against "excessive fines." ECF No. 75 ¶ 16. Mr. Woo's factual allegations are far removed from those that might plausibly establish the existence of an unconstitutionally excessive "fine."

"The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States,* 509 U.S. 602, 609-10 (1993) (quoting *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)). The Excessive Fines Clause is "intended to limit only those fines directly imposed by, and payable to, the government." *Hopkins v. Okla. Pub. Emps. Ret. Sys.,* 150 F.3d 1155, 1162 (10th Cir. 1998) (citing *Browning-Ferris Indus.,* 492 U.S. at 265 (1989)). The term "fine" refers to "a payment to a sovereign as punishment for some offense." *Id.* By contrast, a nonpunitive penalty "serve[s] the remedial purpose of compensating the Government for a loss" and is not subject to the Excessive Fines Clause. *United States v. Bajakajian*, 524 U.S. 321, 329 (1998).

Mr. Woo's allegations do not demonstrate that the confiscation of disallowed property, pursuant to prison regulations requiring the disposal of contraband possessed by a "regressed" inmate, constitutes a fine directly imposed against him by the government. Mr. Woo asserts that

the "punitive nature" of the contraband regulations "is self-evident," ECF No. 75 ¶ 16, but that conclusory proposition is backed by no supporting facts. On their face, the Administrative Regulations that allegedly engendered the "fine" here facilitate the prison's legitimate penological interest in preventing an inmate subject to "a scored classification regressive move" from serving as the conduit for the introduction of items into a higher-security institution that could be used—by Mr. Woo and others—to compromise institutional security. *See* AR 850-06, § IV(B)(4); *see also Duprest v. Rios*, No. CV 19-1782 (ECT/BRT), 2020 WL 3492553, at *4 (D. Minn. June 8, 2020) (concluding that "a disciplinary sanction forfeiting an inmate's good-conduct time is not a 'fine' within the meaning of the Eighth Amendment's prohibition against excessive fines"), *report and recommendation adopted*, 2020 WL 3491631 (D. Minn. June 26, 2020).[11] While Mr. Woo invokes *Austin* as support for the proposition that the forfeiture of his property amounted to "punishment," ECF No. 103 at 13, *Austin* cannot logically be read to support that conclusion. What the Supreme Court held in that case is that the Excessive Fines Clause applied to forfeitures of property under 21 U.S.C. §§ 881(a)(4) and (a)(7), *see* 509 U.S. at 622; it did not expand the reach of the Excessive Fines Clause to confiscation of property prohibited in the prison context.

---

[11] Even if the confiscation of certain contraband items upon Mr. Woo's regression to the CSP were construed as a "fine," that would not meet the standard of "gross disproportionality" required to show a violation of the Excessive Fines Clause. *See Bajakajian,* 524 U.S. at 334 ("a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."). Here, per Mr. Woo's allegations, "about $500" in contraband property was taken from him after he repeatedly refused to comply with the directive to take a cellmate and—after a detour through "every single medium-custody facility in the CDOC"—was ultimately regressively placed at CSP. ECF No. 75 ¶¶ 4, 63.

Were Mr. Woo's allegations found to state a cognizable constitutional violation, prisons would be hamstrung in their ability to regulate and limit inmate property—even for a legitimate security purpose—lest they run afoul of the Excessive Fines Clause. There is no plausible reading of the Clause that compels that result. The fact that CDOC has determined that certain property should be treated as contraband in a high-security institution, and has further concluded that a subgroup of inmates regressed to that institution should not be in possession of that property, are not decisions that implicate the Eighth Amendment Excessive Fines Clause. The court accordingly **RECOMMENDS** that this aspect of Claim One be **DISMISSED with prejudice**.

* * *

In sum, consistent with the foregoing analysis, it is respectfully **RECOMMENDED** that Claim One be **DISMISSED with prejudice** in its entirety.

### 2. Claims Related to Access to Legal Materials (Claim Three)

Claim Three raises multiple constitutional claims against Mr. Stancil, Ms. Sanchez, Ms. Puga, and Ms. Piccioni stemming from the alleged compromise to Mr. Woo's ability to represent himself in connection with his Rule 35(c) Petition, which he asserts was "destroy[ed]" by limitations the prison imposed on his law library time. ECF No. 75 ¶¶ 26-52. Specifically, Mr. Woo asserts that a CDOC Administrative Regulation pursuant to which he was allowed access to twenty-six DVDs for only ninety days (although he received multiple extensions of that time) "foreclosed the provision of over six terabytes of electronic case materials that could only fit into hard drives and Blu-Ray discs." *Id.* ¶ 30; *see* AR 750-01 § IV(G)(3) ("Once the materials have been reviewed and redacted, the legal assistant will send a memo to the offender notifying them

that the materials are available for review in the facility law library for a period of 90 days from the date of notice that the materials are available. Exceptions and/or extensions of the viewing period may be made on a case by case basis and must be in writing.”). The twenty-six DVDs to which Mr. Woo was given access constituted “less than 1% of the total discovery” in his criminal case. ECF No. 75 ¶ 30.

On these grounds, Mr. Woo claims constitutional violations sounding in due process, equal protection, and access to the courts, and he separately contends that Ms. Puga and Ms. Piccioni retaliated against him by creating impediments to his access to his legal materials. *See generally id.* ¶¶ 26-52.[12] The court respectfully finds that Mr. Woo fails to state a cognizable constitutional claim on any of the legal theories he posits.

At its core, Mr. Woo’s claim rests on the unsupported theory that he has a federal constitutional right to self-representation in a state post-conviction proceeding. As one judge in this District has noted, “it is clear that there is no federal constitutional right to self-representation on direct appeal from a criminal conviction.” *Wilson v. Jones*, No. 11-cv-01795-PAB, 2016 WL 7429190, at *2 (D. Colo. May 18, 2016) (citing *Martinez v. Court of Appeal*, 528 U.S. 152, 163 (2000)). “Thus, by logical extension, there also is no federal constitutional right to self-representation in state postconviction proceedings.” *Id.* (citing *McCleaf v. Carroll*, 416 F.

[12] Ms. Piccioni raises the defense of qualified immunity as to all aspects of Claim Three that are raised against her, ECF No. 113 at 9-11, but Ms. Puga invokes qualified immunity only as to the retaliation subclaim. ECF No. 87 at 19; ECF No. 110 at 8-9. For the reasons articulated above, *see* § I(B)(1)(a), the Court rejects Mr. Woo’s argument that the defense has been inadequately raised as to these claims, where the standard for qualified immunity has been articulated; an explanation has been made as to Mr. Woo’s failure to make a showing on an element of his constitutional claims; and both Defendants have presented an argument as to why Mr. Woo fails to make that showing. *See Detreville*, 2025 WL 1874587, at *4.

Supp. 2d 283, 294-95 (D. Del. 2006); *Shields v. Dretke*, 122 F. App'x 133, 145 (5th Cir. 2005)); *see also, e.g.*, *Rowell v. Sec'y Dep't of Corr.*, No. 8:21-cv-2542-KKM-CPT, 2025 WL 448832, at *17 (M.D. Fla. Feb. 10, 2025) ("a defendant has 'no constitutional right to self-representation on direct appeal from a criminal conviction' or during postconviction proceedings") (quoting *Martinez*, 528 U.S. at 163); *Rose v. Crosby*, No. 8:93-cv-1169-SDM-EAJ, 2006 WL 4701821, at *3 (M.D. Fla. Apr. 26, 2006) ("[T]he Sixth Amendment right to self-representation vanishes following a guilty verdict, including on direct appeal."); *People v. Wilson*, 397 P.3d 1090, 1099 (Colo. App. 2011) (stating that a criminal defendant "has no constitutional right to self-representation when appealing an adverse decision in a collateral attack on his conviction").

The various subclaims within Claim Three thus hinge on the flawed assumption that Mr. Woo possesses a viable federal constitutional right to represent himself in connection with his post-conviction proceeding. Because Mr. Woo has not shown that he possesses such a right, by definition he has not plausibly alleged that other constitutional deprivations flow from any compromise to that nonexistent entitlement. However, even if he had such a right, additional pleading deficiencies require the dismissal of each subclaim encompassed in Claim Three, which the court explains, in turn.

***Due process and equal protection.*** Starting with Mr. Woo's procedural due process theory, in addition to articulating no constitutionally protected liberty interest in self-representation, Mr. Woo also has failed to plead that not being afforded the additional time he claims to have needed to review his criminal discovery materials (equating to at least five 40-hour work weeks of time) imposed on him an atypical and significant hardship in relation to the

ordinary incidents of prison life so as to implicate a liberty interest.[13] ECF No. 75 ¶ 30 (alleging that Woo needed to spend "several hundred" additional hours on the review); *see Sutton*, 810 F.3d at 610-11. Mr. Woo attempts to overcome this pleading deficiency by reference to *Hale v. Fox*, 829 F.3d 1162 (10th Cir. 2016), and *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009). ECF No. 103 at 15. Mr. Woo's reliance on this case law, which has no bearing on his claim, is misplaced.

In *Hale*, the Tenth Circuit found that "when Congress affords prisoners a certain post-conviction remedy, due process requires they also have access to procedures that are 'fundamentally [ ]adequate to vindicate the substantive rights provided.'" 829 F.3d at 1175 (quoting *Osborne*, 557 U.S. at 69) (alteration in original). Thus, "[t]o make out a procedural due process violation in this context, a prisoner must show (1) a substantive 'parent right' that derives from a source such as Congress's statutory post-conviction scheme, and (2) lack of procedures adequate to assert and protect that right." *Id.* at 1175 (citing *Osborne*, 557 U.S. at 68). In *Hale*, the inmate's claim faltered at the first step, because he failed to establish "a due process liberty interest in challenging his conviction on [the identified] grounds after already

[13] In his response to the CDOC Defendants' Motion, Mr. Woo disclaimed any property-focused due process right "in accessing his DVDs per se" (ECF No. 103 at 16), and so the court declines to consider such a claim. Regardless, Mr. Woo has failed to alleged that he has a cognizable property interest in his post-conviction discovery materials. *See* AR § 750-01(IV)(G)(8)(b) ("CD's or DVDs from courts are a loan of record, and *are not the property of the offender*.") (emphasis added). Put otherwise, an inmate's inability to acquire an ownership interest in court-provided discovery materials does not plausibly suggest the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

unsuccessfully bringing one round of collateral review." *Id.* at 1175.[14] So, too, has Mr. Woo failed to plausibly establish a federal "parent right" to pursue post-conviction review without the assistance of counsel or, relatedly, to compel CDOC officials to provide him unlimited, indefinite access to massive quantities of criminal discovery files to facilitate his desire to represent himself.

As for the equal protection component of Claim Three, Mr. Woo asserts that "CDOC's legal access [Administrative Regulations] violate equal protection based on representation classification"—that is, inmates with legal counsel versus those who represent themselves—with represented inmates "receiv[ing] the benefit of all case materials" through their attorneys. ECF No. 75 ¶ 46. However, by his own choice (at least until recently),[15] Mr. Woo is not similarly situated to inmates who have sought the assistance of counsel, nor do the well-pleaded facts plausibly demonstrate that the CDOC lacked a legitimate penological interest in concluding that it cannot reasonably facilitate, without compromising the rights of other inmates, a single prisoner taking up "hundreds of hours" in the law library. ECF No. 75 ¶¶ 27, 35; *see, e.g.*, *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (to state an equal protection claim, a plaintiff must allege that he was "similarly situated" to other inmates, and that the difference in treatment was not "reasonably related to legitimate penological interests").

---

[14] *Osborne's* due process claim also failed. The Supreme Court perceived "nothing inadequate about the procedures Alaska has provided to vindicate its state right to post-conviction relief in general, and nothing inadequate about how those procedures apply to those who seek access to DNA evidence." 557 U.S. at 69.

[15] Recall that the state court has appointed Mr. Woo alternate defense counsel to represent him in connection with the pending Rule 35(c) Petition. September 4, 2026 Order Appointing Counsel Over Defendant's Objection, *Woo*, No. 2016CR2069.

For these reasons, the court respectfully finds that no component of Claim Three should proceed insofar as it rests on a claimed violation of Mr. Woo's due process or equal protection rights. Consistent with the analysis set forth throughout this recommendation, the court respectfully recommends that those implausibly-pleaded claims be **DISMISSED with prejudice**.

***Access to the courts.*** Mr. Woo contends that his inability to spend hundreds of additional hours in the prison library to advance his self-representation efforts caused him to miss a deadline to file a supplement to his Rule 35(c) Petition. ECF No. 75 ¶¶ 27, 35. Even if Mr. Woo had a federal constitutional right to represent himself in his post-conviction proceeding, he states no plausible claim for denial of access to the courts.

The Tenth Circuit has explained that "[t]he right of access to the courts is not a freestanding right, but a means to vindicate other rights." *Coddington v. Crow*, No. 22-6100, 2022 WL 10860283, at *6 (10th Cir. Oct. 19, 2022); *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996) (recognizing that inmates do not have a "freestanding right to a law library or legal assistance"). "Thus, to state an access-to-courts claim, the plaintiff must satisfy a 'threshold determination' that he or she has 'standing to assert' such a claim by alleging actual injury." *Leek v. Androski*, No. 21-3165, 2022 WL 1134967, at *3 (10th Cir. Apr. 18, 2022) (quoting *Simkins v. Bruce*, 406 F.3d 1239, 1244 n.5 (10th Cir. 2005)). To adequately allege actual injury, the plaintiff must set forth facts to "show that any denial or delay of access to the court prejudiced him in pursuing litigation." *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006) (quoting *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996)); *see also Gee*, 627 F.3d at 1191 (a claim for denial of access to courts requires allegations that a plaintiff was "frustrated or

impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement"). Mr. Woo's allegations fail this test.

An inmate plaintiff "cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. Rather, the inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* The inmate "need not show," however, that he would have prevailed on the interfered-with claim, "only that it was not frivolous." *Simkins*, 406 F.3d at 1244. To be nonfrivolous, the underlying claim must be "described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).

Mr. Woo has not alleged that his inability to gain access to the prison law library for several hundred additional hours has frustrated or impeded his efforts to pursue his petition for post-conviction relief. *See Gee*, 627 F.3d at 1191. He asserts that he missed one deadline in his post-conviction case back in March 2024 ECF No. 75 ¶¶ 27, 35, but that was not a case-ending omission, as the voluminous docket entries entered since then in that still-pending matter attest. *See* Register of Actions, *Woo*, No. 2016CR002069. The state court has recently appointed counsel to assist Mr. Woo, albeit over his objection. Regardless, the fact that he would prefer a different approach to litigating that issue—one that would compel the diversion of voluminous CDOC library resources in a manner favorable to him—demonstrates no frustration or impediment to his ability to pursue the post-conviction relief he seeks. Quite the opposite may be inferred from the facts before this court: notwithstanding its long pendency, his Rule 35(c)

Petition remains a live issue which Mr. Woo has the ability to pursue to judicial resolution. And the numerous filings he has made in his postconviction proceeding, and the host of other litigation he has filed, *see* Background § I, *supra*, belie any claim of hindrance to Mr. Woo's ability to access the courts.

In light of these patent pleading deficiencies, and the irrefutability of the court records that expose them, the court **RECOMMENDS** that Mr. Woo's access-to-the-courts claim be **dismissed with prejudice**.

***Retaliation.*** The final subclaim within Claim Three is a retaliation claim brought against Ms. Piccioni, who worked in the CCF law library, and Ms. Puga, who was Ms. Piccioni's "remote" supervisor. ECF No. 75 ¶¶ 34, 49.

The First Amendment prohibits officials from retaliating against individuals for exercising their constitutional rights. *Poole v. Cnty. of Otero*, 271 F.3d 955, 960 (10th Cir. 2001) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006). To state a First Amendment retaliation claim against a government official, a plaintiff must allege facts plausibly establishing three elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). Mr. Woo contends that the retaliatory act here was "terminating [his] access to his case materials"—the twenty-six DVDs

containing a minute portion of the discovery materials in his criminal case. ECF No. 75 ¶ 49. Mr. Woo attempts to satisfy his pleading burden based on the following chronology of his interactions with Ms. Puga and Ms. Piccioni:

- November 2023: Woo informs Piccioni that he filed this lawsuit. [16]
- February 15, 2024: Puga directs a "hostile communication towards Woo," the subjects of which is not alleged but that consisted of "a number of sentences in all caps ending with numerous exclamation points."
- February to June 2024: On six occasions during this timeframe, Piccioni or Puga deny six of Woo's grievances seeking to review the twenty-six DVDs.
- September 11, 2024: Puga terminates Woo's access to the DVDs.
- Unknown date after September 11, 2024: Woo informs Piccioni that he intends to pursue legal action against her.
- October 28, 2024: Piccioni denies a grievance submitted by Woo.
- First half of January 2025: Piccioni denies Woo law library access "without justification," but "this wrongful deprivation . . . did not cause [Woo] injury."

ECF No. 75 ¶¶ 36, 49-50.

Mr. Woo argues, with regard to Ms. Puga, that the termination of his access to the DVDs on September 11, 2024, "came three months after Puga's denial of his grievance on June 5, 2024," and this, "[c]oupled with Puga's hostile communication towards Woo on February 15, 2024 . . . indicates retaliation strategically timed to avoid temporal proximity with her discovery of Woo's § 1983 action against her." *Id.* ¶ 49. Mr. Woo contends that Ms. Piccioni is likewise responsible for Ms. Puga's allegedly retaliatory actions; he claims that Ms. Piccioni "violated Woo's constitutional right to be free from retaliation for petitioning the government for redress of grievances under the First Amendment by participating in Puga's retaliatory act." ECF No. 121 at

[16] Ms. Puga was among the group of original Defendants, ECF No. 1, but Ms. Piccioni was first named as a Defendant in the proposed Second Amended Complaint docketed on May 19, 2025. ECF No. 67-1.

11.

Ms. Puga and Ms. Piccioni argue that Mr. Woo has not adequately pled the third element of a retaliation claim: that the adverse action of terminating Mr. Woo's access to the DVDs in September 2024 was "substantially motivated as a response to [Woo's] exercise of constitutionally protected conduct." ECF No. 87 at 19; ECF No. 75 ¶ 49. Ms. Puga and Ms. Piccioni dispute the notion that a retaliatory motive can be inferred based on a purported attempt "to *avoid* temporal proximity," ECF No. 75 ¶ 49 (emphasis added), that is, by taking actions far outside the timeframe when causation ordinarily can be inferred based on timing alone. ECF No. 87 at 18.

Mr. Woo's unusual take on causation is unsupported by any well-pleaded, non-conclusory factual allegations sufficient to show that Ms. Puga engaged in some deliberate scheme to delay her decision about the DVDs for the purpose of negating an inference of causation based on timing. Per Mr. Woo's pleading, the fact of the matter is that causation *cannot* plausibly be inferred based on temporal proximity here, where ten months passed between the November 2023 filing date of this lawsuit and the termination of his access to the DVDs in September 2024, and more than three months passed between the submission of Mr. Woo's last relevant grievance, which Ms. Puga denied on June 5, 2024, and the September 2024 review termination date. *See Meiners v. University of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004) (lapses of "two months and one week" and "just under three months" between the protected conduct and the adverse actions are too long "to establish causation by temporal proximity alone"); *Lauck v. Campbell Cnty.*, 627 F.3d 805, 815 (10th Cir. 2010) (a fact-finder cannot infer causation from temporal proximity alone when the act took place more than three

months after the protected activity); *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1217 (10th Cir. 2003) (a five-month gap is ordinarily too long to support an inference of causation); *cf. Conroy* v. *Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013) ("It appears clear that, if the adverse action occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference[.]").

Mr. Woo therefore has failed to allege causation based on temporal proximity. No matter how generously the court construes his allegations, the time gaps are simply too wide. And his other allegations are likewise insufficient to plausibly establish the requisite causal connection.

"To satisfy the third prong of the First Amendment retaliation test, an inmate must allege specific facts showing that '*but for* the retaliatory motive, the incidents to which he refers . . . would not have taken place.'" *Banks v. Katzenmeyer*, 645 F. App'x 770, 772 (10th Cir. 2016) (emphasis added) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). In this regard, "[m]ere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation *because of* the exercise of the prisoner's constitutional rights." *Gee*, 627 F.3d at 1186 (quoting *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990)); *see also Guy v. Lampert*, 748 F. App'x 178, 181 (10th Cir. 2018) ("To make a prisoner's claim of retaliation by a prison official plausible, it must be supported by (1) specific facts about the adverse action taken against the prisoner to make it plausible that the action was not motivated by legitimate grounds and (2) specific facts showing why the particular official would be motivated to improperly harm the prisoner.").

Here, save for a timeline that is too long, standing alone, to plausibly show but-for causation, Mr. Woo's assertions reduce to his statements that the "adverse action was

substantially motivated as a response to Woo's protected activities," and that terminating his DVD access in September 2024 was "arbitrary" because extensions previously had been granted and "would not have occurred but for Puga's retaliatory motive." ECF No. 75 ¶ 49. These, however, are wholly conclusory contentions—more in the nature of restatements of the operative legal standard than well-supported factual averments—that are not entitled to the presumption of truth and that are insufficient to nudge Mr. Woo's retaliation claim across the line from the conceivable to the plausible. *Iqbal*, 556 U.S. at 683; *see also Banks*, 645 F. App'x at 772 ("generic and unspecific allegations" that a defendant acted in a retaliatory manner after a plaintiff filed a grievance are "insufficient to satisfy the 'but for' requirement"). These conclusory allegations fail to support an inference that Ms. Puga and Ms. Piccioni had no other, non-retaliatory reason to call an end to Mr. Woo's access to the DVDs after seventy-four hours of review time in the library, *see* ECF No. 75 ¶ 38—particularly in light of a prison policy setting a default ninety-day review period. *See* AR 750-01 § IV(G)(3).

In conclusion, Mr. Woo's allegations are insufficient to plausibly demonstrate that, but for a retaliatory motive, Ms. Puga and Ms. Piccioni would not have called a halt to his DVD access. Because Mr. Woo's allegations do not satisfy the third prong of the retaliation test, he has failed to plead a constitutional violation. Ms. Puga and Ms. Piccioni are to qualified immunity on the retaliation claim, which the court respectfully **RECOMMENDS** be **DISMISSED with prejudice**. *See Holmes*, 830 F.3d at 1134-35.

* * *

It would be futile for Mr. Woo to attempt to plead around the defects in any of the subclaims within Claim Three. The chronological and factual record, which Mr. Woo has

articulated in extensive detail after several opportunities to amend, confirms that his claims are not cognizable as a matter of law. The court therefore respectfully **RECOMMENDS** that Claim Three be **DISMISSED with prejudice** in its entirety.

### 3. Claims Challenging Mr. Woo's Prison Transfers (Claim Four)

Between June and December 2023, Mr. Woo was transferred seventeen times between various CDOC facilities, which he asserts violated his rights to due process, equal protection, access to the court, and to avoid cruel and unusual punishment. ECF No. 75 ¶¶ 53-65. The court finds that Mr. Woo fails to state a plausible claim for relief, on any of these theories.

***Procedural due process.*** To begin with the due process question, Mr. Stancil, Ms. Sanchez, and Mr. Long argue that Mr. Woo fails to state a plausible claim because he "has no protected right to remain in any particular CDOC facility and thus he is not entitled to due process protections before a transfer from one CDOC facility to another." ECF No. 87 at 20. Mr. Woo responds that the unusual circumstances here warrant due process protections because he was transferred "to break him into acceptance of a cellmate." ECF No. 103 at 25; ECF No. 75 ¶ 62. Mr. Woo has not plausibly alleged an atypical and significant hardship on this basis, and so his procedural due process claim must fail.

Mr. Woo's six-month transfer journey appears to have begun when he was classified as an "RH," or "Restrictive Housing," inmate because he refused to accept a cellmate. ECF No. 75 ¶ 57. Mr. Woo asserts that his "RH placements were self-inflicted" because "he made clear he would refuse housing with all cellmates at all facilities."[17] *Id.* On July 19, 2023, he told "a four-

[17] Mr. Woo describes himself "[a]s a diagnosed schizoid abnormally triggered by noise and proximity to other inmates," and asserts that "it is indispensable to Woo's sanity and the safety of

person classification panel" at the Sterling Correctional Facility, which included Defendant Long, that he would "waive any right against RH placement for over 15 days" and would "accept[] the harshness of long-term RH placement" to avoid being deprived "of legal access inflicted by the frequent transfers." *Id.* Yet, Mr. Long continued to relocate Mr. Woo, who was eventually housed in "every single medium-custody facility in the CDOC." *Id.* ¶ 63.

Mr. Woo's claim fails at the first step of the due-process inquiry: "Did the individual possess a protected interest to which due process protection was applicable?" *Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1201 (10th Cir. 2017). To establish a protected liberty interest in a prison transfer, Mr. Woo must be able to show that keeping him in a Colorado prison subjected him to an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Al-Turki v. Tomsic*, 926 F.3d 610, 616 (10th Cir. 2019) (quoting *Sandin*, 515 U.S. at 484). "As a matter of law, [an inmate] has no liberty interest in being incarcerated in a particular institution or in discretionary classification decisions by prison officials." *Gee*, 627 F.3d at 1193; *see also, e.g.*, *Thompson v. Coulter*, 680 F. App'x 707, 710 (10th Cir. 2017) (inmate had no recognized property or liberty interest in his prison classification); *Grossman v. Bruce,* 447 F.3d 801, 806 (10th Cir. 2006) (observing that placement in administrative segregation did not implicate a liberty interest); *Milligan v. Colo. Dep't of Corr.*, 751 P.2d 75, 76 (Colo. App. 1988) ("Where, as here, inmate classification decisions are within the discretion of the Department of Corrections officials, defendant's particular classification implicates no liberty interest protected by the Fourteenth Amendment due process

---

other inmates and himself that he be able to isolate himself, even at the cost of long-term RH housing." ECF No. 75 at 23 n.11.

clause.") (citation omitted). Therefore, the court turns to an assessment of whether the particular alleged conditions of confinement attendant on Mr. Woo's various transfers give rise to a liberty interest that could trigger a due process violation.

The court's analysis is guided by "four non-dispositive factors relevant to determining when a prison condition imposes atypical and significant hardship: (1) the existence of a legitimate penological interest, (2) the extremity of the condition, (3) the possible effect on the duration of confinement, and (4) the indeterminate nature of the condition." *Vue v. Dowling*, No. 22-5062, 2023 WL 2906164, at *4 (10th Cir. Apr. 12, 2023) (citing *DiMarco*, 473 F.3d at 1342. In conducting this assessment, courts "must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Id.* (quoting *DiMarco*, 473 F.3d at 1342).

Mr. Woo asserts that a liberty interest "should be" associated with "frequent prison transfers that serve no practical purpose[.]"ECF No. 75 ¶ 62. However, Mr. Woo's opinion carries no weight in the atypical-and-significant-hardship determination, which hinges instead on whether those moves "further[ed] a legitimate penological interest." *DiMarco*, 473 F.3d at 1342. And whether it served a legitimate penological interest to require Mr. Woo to obey a housing rule that generally applies to all CDOC inmates—and to attempt to address his non-compliance with that rule by the mechanism of frequent moves between medium-security facilities—is a decision for which prison officials are accorded deference, even if Mr. Woo thinks the officials were wrong. *DiMarco*, 473 F.3d at 1342; *Franklin v. District of Columbia*, 163 F.3d 625, 634-35 (D.C. Cir. 1998) ("Decisions about where a prisoner should be confined, at what level of custody (maximum, close, medium, minimum, or community) he should be classified, when he should be

transferred and so forth are commonplace judgments in the 'day-to-day management of prisons.'") (quoting *Sandin*, 515 U.S. at 482)).

Turning to the purported extremity of these alleged conditions, Mr. Woo labels prison transfers "one of the most significant hardships in the incarceration experience," occasioning "a day-long ordeal largely spent idle in holding cells without any property, incapacitating Woo's ability to accomplish anything for potentially days via deprivation of legal papers," ECF No. 75 ¶ 62.[18] As other consequences of these transfers, Mr. Woo was sometimes caught outside in the cold without a jacket for fifteen to twenty minutes as he waited to obtain his medication; he once had to stay in a "semi-flooded cell for three days without shoes"; and he once was unable to brush his teeth for "nearly a week." *Id.*

Taken together, these allegations of discomforts and inconveniences do not plausibly indicate the existence of conditions of confinement so extreme as to amount to an atypical and significant hardship in comparison with the ordinary incidents of prison life. *DiMarco*, 473 F.3d at 1342; *see also Al-Turki*, 926 F.3d at 616 (holding that the plaintiff failed to plead a due process violation because he alleged only "'ordinary incidents'" of prison life); *Muhammad v. Hood*, 100 F. App'x 782, 783 (10th Cir. 2004) (finding no atypical and significant hardship where the plaintiff was not placed in special confinement but merely moved to a more restrictive prison); *Silverstein v. Fed. Bureau of Prisons*, 704 F. Supp. 2d 1077, 1096 (D. Colo. 2010) (dismissing the plaintiff's procedural due process claim because his "transfer to an administrative segregation facility did not represent a substantial alteration of the conditions of his

---

[18] The docket in Mr. Woo's post-conviction proceeding shows that he made ten filings in that matter during the same six-month period. *See* Register of Actions, *Woo*, 2016CR002069.

confinement"); *cf. Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (finding atypical and significant hardship where the inmate was subjected to indefinite solitary confinement, 24-hour lighting, minimal exercise, and disqualification from parole eligibility). Mr. Woo's allegations support no inference that his conditions of confinement in any CDOC facility were other than "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

Under the third *DiMarco* factor, Mr. Woo cannot allege that the six-month period of multiple transfers had the potential to extend the length of his incarceration, where he is serving a life sentence without the possibility of parole. *DiMarco*, 473 F.3d at 1342. Lastly, under the fourth factor, Mr. Woo has not alleged that these frequent transfers continued indefinitely. *See generally* ECF No. 75 (no allegations of transfers continuing after December 2023).

Considering Mr. Woo's allegations in their totality, they do not plausibly establish that he has a state-created liberty interest in avoiding the challenged transfers between CDOC facilities, and the conditions of confinement associated with them, that occurred between July and December 2023. Consequently, Mr. Woo has failed to state a plausible due process claim. *Meachum*, 427 U.S. at 225 ("Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system."); *deWilliams v. Garcia*, 602 F. App'x 692, 696 (10th Cir. 2015) (rejecting as "invalid" the argument that an inmate "should have been afforded due process before being transferred to various prisons," because interests in life, liberty or property" were not "implicated by the transfers"); *Muniz v. Moore*, 375 F. App'x 841, 844 (10th Cir. 2010) (allegation that inmate was "merely . . . transferred between state facilities" based on classifications related to

"his criminal history and behavior while in prison" did not state a cognizable due process claim); *Hackborn v. Hansen*, No. 19-cv-02679-DDD-NYW, 2021 WL 7449311, at *6 (D. Colo. June 14, 2021) (various prison transfers of CDOC inmate did not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life), *report and recommendation adopted*, 2022 WL 391809 (D. Colo. Feb. 9, 2022).

Mr. Woo states no claim for relief on a due-process theory, and the court therefore **RECOMMENDS** that this aspect of Claim Four be **DISMISSED with prejudice**.

***Equal protection "class of one***." Mr. Woo asserts that his treatment with respect to transfers support his bringing an equal protection claim on a "class of one" theory because, "to the best of [his] knowledge," there was one other inmate "who was transferred to CCF after refusing housing only twice," while Mr. Woo "was targeted for transfer to every single medium-custody facility in the CDOC." ECF No. 75 ¶ 63. This unidentified inmate, "[t]o the best of Woo's knowledge," was "similarly situated [to Mr. Woo] in every relevant respect." *Id.*

"To prevail on a class-of-one theory, a plaintiff must allege and prove (1) that he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment." *Mojo Built, LLC v. City of Prairie Village., Kan.*, No. 21-3054, 2022 WL 288139, at *2 (10th Cir. Feb. 1, 2022) (citation modified) (quoting *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1253 (10th Cir. 2016) (alteration in original)); *see also Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (to plead a plausible class-of-one claim, the allegations "must first establish that others, 'similarly situated in every material respect' were treated differently," and then that "this difference in treatment was without rational basis" and "wholly unrelated to any legitimate state

activity”). “In the paradigmatic class-of-one case, a public official inflicts a cost or burden on one person without imposing it on those who are similarly situated in material respects, and does so without any conceivable basis other than a wholly illegitimate motive.” *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1209 (10th Cir. 2006) (citation omitted). Under these rigorous standards, and granting Mr. Woo’s pleading the generous leeway to which he is entitled, his claim fails.

Mr. Woo avers, vaguely, that he “is aware of one inmate who was transferred to CCF after refusing housing only twice,” ECF No. 75 ¶ 63, but he presents no factual specifics plausibly showing that this inmate was similarly situated to him “in all material respects.” *Kansas Penn Gaming*, 656 F.3d at 1220. Among the missing allegations are facts concerning the other inmate’s criminal history and history of conduct in the institution—rendering the complaint bereft of allegations plausibly demonstrating any substantial similarity between the two, let alone similarity in all material respects. Neither has Mr. Woo stated facts plausibly evincing the absence of any rational basis for the difference in treatment between Mr. Woo and the other inmate who refused housing twice. And because the well-pleaded facts demonstrate Mr. Woo’s recalcitrance in refusing a cellmate—which he acknowledges contravenes prison regulations—it cannot plausibly be inferred from his allegations that CDOC’s decisions concerning his placement lacked “any conceivable basis other than a wholly illegitimate motive.” *Jicarilla Apache Nation*, 440 F.3d at 1209.

Because Mr. Woo’s allegations are inadequate to meet his substantial burden to support a class-of-one equal protection claim, the court respectfully **RECOMMENDS** that this subclaim be **DISMISSED with prejudice**.

***Access to the courts.*** Mr. Woo reasserts an access-to-the-courts claim based on the impediment allegedly posed by his prison transfers in the latter half of 2023. ECF No. 75 ¶ 64. Here, again, Mr. Woo has failed to allege that his changing conditions of confinement frustrated or impeded his efforts to pursue his petition for post-conviction relief. *See Gee*, 627 F.3d at 1191. Nor can he plausibly do so in light of the fact that the docket in his state post-conviction proceeding reflects that he made ten filings during the period at issue; that the proceeding is ongoing; and that even after years of litigation, the state court is taking steps to ensure that Mr. Woo's position is heard in the courtroom. *See generally* Register of Actions, *Woo*, 2016CR002069. Because Mr. Woo again has failed to allege that he has sustained an actual injury by a denial or delay of access that has prejudiced him in pursuing litigation, *see Lewis*, 518 U.S. at 350-51, the court **RECOMMENDS** that the access-to-the-courts subclaim within Claim Four be **DISMISSED with prejudice**.

***Eighth Amendment.*** As support for the Eighth Amendment component of Claim Four, Mr. Woo incorporates his allegations regarding his due process claim: the fact of multiple transfers which result in " day-long ordeal[s]" where he must sit idly in holding cells without his legal and other property; an unknown amount of times when he had to wait for his medicine outside, in the cold, for fifteen to twenty minutes; lack of access to a toothbrush for "nearly a week"; and being without his shoes for one three-day period in a "semi-flooded cell." ECF No. 75 ¶¶ 62, 65.

While the court does not minimize the unpleasantness of these temporary conditions, it cannot find, based on the well-pleaded facts, that they implicate deprivations of constitutional magnitude. Any reasonable reading of these contentions, however generously construed in Mr.

Woo's favor, does not plausibly suggest "deprivations denying the minimal civilized measure of life's necessities," *see Rhodes*, 452 U.S. at 347, as interpreted by courts in this Circuit. *See, e.g.*, *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001) (finding that sewage backups in cell did not constitute an actionable deprivation under the Eighth Amendment: "While the Court recognizes that plumbing problems of this nature are maybe disgusting, they do not rise to the level of intolerable conditions of confinement if they occur only occasionally or infrequently."), *aff'd*, 275 F.3d 1164 (10th Cir. 2001); *Butler v. Rice*, No. CIV 20-231-RAW-SPS, 2021 WL 4134808, at *3 (E.D. Okla. Sept. 10, 2021) (concluding that detainee's being compelled "to sleep on a concrete floor with two thin wool blankets, but no mat, for approximately seven months" because of overcrowding did not satisfy the objective component of an Eighth Amendment claim).

The well-pleaded facts thus do not satisfy the objective component of the Eighth Amendment test. But even if they did, Mr. Woo's allegations do not satisfy the subjective component, either. He has failed to plead factual content from which this court reasonably could infer that Mr. Stancil, Ms. Sandoval, or Mr. Long knew about Mr. Woo's alleged deprivations and "disregard[ed] an excessive risk to his health or safety" in a manner that equates to "recklessness as used in the criminal law." *Farmer*, 511 U.S. at 837, 839-40 (defining "subjective recklessness as used in the criminal law" as the test for "deliberate indifference"). What Mr. Woo *has* alleged is that these officials exercised their well-established discretion to transfer him from one CDOC institution to another; what he has not alleged is that any of them had knowledge of the particular transfer-associated conditions of which he complains here, such

that their decision to transfer him evinced criminal recklessness. Mr. Woo therefore has failed to plead a cognizable Eighth Amendment claim.

Mr. Woo has thoroughly described the transfer-associated conditions on which his claim rests, and none satisfies the objective or subjective elements of an Eighth Amendment conditions-of-confinement claim. Mr. Woo's failure to plead a violation of a constitutional right requires dismissal of the claim, and Mr. Long to qualified immunity. The court therefore **RECOMMENDS** that the Eighth Amendment component of Claim Four be **DISMISSED with prejudice**.

* * *

Claim Four, in its totality, fails to state a plausible claim for relief on any of the theories Mr. Woo advances. The court therefore respectfully **RECOMMENDS** that Claim Four be **DISMISSED with prejudice, in its entirety**.

**4. State-Law Tort Claims (Claim Five)**

In Claim Five, Mr. Woo raises multiple state-law tort claims directed against Defendants Edwards and Barr. ECF No. 75 ¶ 72 (referencing theories of replevin, conversion, "and any other applicable tort under Colorado law").

When "the district court has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction over a [supplemental] claim." 28 U.S.C. § 1367(c)(3). While this is a "purely discretionary" assessment, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009), "[t]he Supreme Court has encouraged the practice of dismissing state claims or remanding them to state court when the federal claims to which they are supplemental have dropped out before trial." *Barnett v. Hall, Estill, Hardwick, Gable, Golden &*

*Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020). And the Tenth Circuit has emphasized that courts "*should* decline the exercise of jurisdiction" when it has disposed of the federal claims. *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (emphasis added) (internal quotation marks omitted) *cf. Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025) ("With the loss of federal-question jurisdiction, the court loses as well its supplemental jurisdiction over the state claims"). This court also bears in mind, in accordance with the guidance of the Tenth Circuit, that "notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Id.* at 1230 (brackets and internal quotation marks omitted). Indeed, the Tenth Circuit recently reversed a grant of summary judgment on state-law claims where the district court had also granted summary judgment on the remaining federal claim. *Horocofsky v. City of Lawrence, Kansas*, --- F.4th --- 2026 WL 2673123, at *13 (10th Cir. Sept. 10, 2026) ("Because it does not appear from the record that the district court considered dismissing the state-law claims after it fully disposed of the federal claims, we reverse the disposition of the state-law claims for the district court to consider whether it should have declined to exercise its supplemental jurisdiction.").

Applying these principles here, the court finds that supplemental jurisdiction over Mr. Woo's state-law claims should be declined. If the United States District Judge adopts this recommendation, that order will fully dispose of all federal claims, which will be dismissed for failure to state a claim or because federal subject-matter jurisdiction is lacking. *See* § II, *infra* (recommending dismissal of the federal claim brought against the Governor and the Attorney General for lack of subject-matter jurisdiction). With that, there would be no "compelling reasons" for this court to hang on to state-law claims untethered to any federal cause of action.

*Barnett*, 956 F.3d at 1230. Accordingly, the court respectfully **RECOMMENDS** that supplemental jurisdiction over Mr. Woo's state claims be **DECLINED**.

## II. The Governor's and Attorney General's Motion to Dismiss

In Claim Two, Mr. Woo sues the Governor and the Attorney General related to the confiscation of his property deemed contraband when he was assigned to CSP. ECF No. 75 ¶¶ 22-25. The basis for this official capacity claim is Mr. Woo's contention that he "has no state postdeprivation remedy for his property claims because the CGIA does not waive immunity as to a claim for property wrongfully seized or detained by the state, irrespective of whether he is a convicted prisoner." *Id.* ¶ 24; *see* Colo. Rev. Stat. § 24-10-106(1.5)(a) ("The waiver of sovereign immunity created in paragraphs (b) and (e) of subsection (1) of this section [of the CGIA] does not apply to claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction, and such correctional facility or jail shall be immune from liability as set forth in subsection (1) of this section."). Thus, according to Mr. Woo, the CGIA violates his rights to due process and access to the court "under the First and Fourteenth Amendments as applied to replevin claims against state entities." ECF No. 75 ¶ 25. As a remedy, Mr. Woo seeks a declaratory judgment that "the CGIA's provisions under C.R.S. 24-10-106 and C.R.S. 24-10-18, as applied to the foreclosure of replevin claims against state entities," is unconstitutional. *Id.* at 6.

The Governor and Attorney General counter that this claim is barred because they are entitled to immunity under the Eleventh Amendment. But even if they were not, they assert that the defects underlying the claim—that Mr. Woo does not have a protected interest in the contraband property at issue, which this court has found to be the case, *see* § I(B)(1)(a), *supra*—

would equally compel dismissal of the standalone claim against them. *See generally* ECF No. 111. While mindful of the probable result of a merits assessment of this claim, this court "may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits." *Ruhrgas AG* v. *Marathon Oil Co*., 526 U.S. 574, 577 (1999). Without subject-matter jurisdiction, the court has no power to adjudicate Mr. Woo's claim, *see United States v. Hopson*, 150 F.4th 1290, 1296 (10th Cir. 2025), *cert. denied*, 146 S. Ct. 2707 (2026), and so the undersigned proceeds to address the threshold jurisdictional question and finds that Eleventh Amendment immunity divests it of jurisdiction over the Governor and the Attorney General.

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment "declares a policy and sets forth an explicit limitation on federal jurisdictional power[.]" *Sutton v. Utah State Sch. For Deaf & Blind*, 173 F.3d 1226, 1231 (10th Cir. 1999) (quoting *Ford Moter Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 467 (1945)). And it "bars suits against states in federal court." *Id.* at 1231-32 (citation omitted). An official capacity claim against a government officer is considered a claim "against the government that employs that officer." *See Strepka v. Miller*, 28 F. App'x 823, 828 (10th Cir. 2001). Colorado has not waived its immunity under the Eleventh Amendment. *See Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988) (holding that the CGIA does not waive Colorado's constitutional immunity).

Mr. Woo argues that *Ex parte Young* applies and allows this federal suit against the Governor and the Attorney General to proceed. ECF No. 115 at 2-11. "Under the *Ex parte Young* exception, a plaintiff may sue individual state officers acting in their official capacities if the

complaint alleges an ongoing violation of federal law and the plaintiff seeks only prospective relief." *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (citing *Ex parte Young*, 209 U.S. 123, 159-160 (1908)). But this exception is not absolute. In order for it to apply, the state official must "'have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty.'" *Id.* (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (quoting *Ex parte Young*, 209 U.S. at 157)). "This connection need not be particularly special, but *Ex parte Young* 'requires something 'more than a mere general duty to enforce the law.'" *Drexler v. Weiser*, No. 25-1173, 2026 WL 2137881, at *3 (10th Cir. July 24, 2026) (quoting *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 739 (10th Cir. 2024)). The issue here, then, is whether the Governor or the Attorney General has any enforcement connection to the CGIA. *See id.*

The Governor and the Attorney General argue that the *Ex parte Young* exception does not apply because neither has a "particular duty" to enforce the CGIA. ECF No. 111 at 6. In the context of that statute, it is the courts that "carry out the statutory directive by determining when a waiver of immunity (per 24-10-16, C.R.S.) is appropriate." *Id.* As the Governor and the Attorney General note, Mr. Woo points only to "general duties" for which they are responsible. *Id.* (citing Colo. Const. art. IV, § 2 ("The supreme executive power of the state shall be vested in the governor, who shall take care that the laws be faithfully executed."); Colo. Rev. Stat. § 24-31-101(1)(i) (delineating "Powers and duties of attorney general," including to "independently initiate and bring civil and criminal actions to enforce state laws")).[19]

[19] The eighteen examples of laws listed as falling within the Attorney General's civil and criminal enforcement authority do not include the CGIA. *See* Colo. Rev. Stat. § 24-31-101(1)(i).

The court respectfully agrees with the Governor and the Attorney General that neither of them has a particular duty to enforce the CGIA. Mr. Woo identifies no provision in that statute that would impose such a duty, and this court discerns none from its reading of the CGIA. Where, as here, "neither the Governor nor the Attorney General has a particular duty to enforce the challenged statute," and "their connection [to the law] stems from their general enforcement power," they "are not proper parties, and they have Eleventh Amendment immunity." *Hendrickson*, 992 F.3d at 967 (finding that the Governor and the Attorney General were cloaked with Eleventh Amendment immunity where they had no particular duty to enforce New Mexico's Public Employee Bargaining Act); *Drexler*, 2026 WL 2137881, at *5 (rejecting plaintiff's attempt to circumvent Eleventh Amendment immunity by "invocation of the Attorney General's authority as the state's chief legal representative" with responsibility for enforcing the Colorado's criminal protection-order and stalking statutes); *Free Speech Coal.*, 119 F.4th at 740 (holding that the Attorney General was not subject to suit under *Ex parte Young* because he had only "general responsibility for enforcing . . . state laws," which did not equate to enforcement authority "in connection with the [challenged law]"); *Peterson v. Martinez*, 707 F.3d 1197, 1205, 1207 (10th Cir. 2013) (holding that the executive director of the Colorado Department of Public Safety received Eleventh Amendment immunity because county sheriffs were assigned the task of administering the challenged law: "when a state law explicitly empowers one set of officials to enforce its terms, a plaintiff cannot sue a different official absent some evidence that the defendant is connected to the enforcement of the challenged law"); *cf. Bella Health & Wellness v. Weiser*, 699 F. Supp. 3d 1189, 1211 (D. Colo. 2023) (finding that claims against the Attorney General were not barred by the Eleventh Amendment where a specific statute "*requires* the

attorney general to bring charges referred to him by the Medical and Nursing Boards") (emphasis added); *Masterpiece Cakeshop Inc. v. Elenis*, 445 F. Supp. 3d 1226, 1253 (D. Colo. 2019) (finding same, with regard to Colo. Rev. Stat. § 24-34-601(2)(a), concerning discrimination in places of public accommodation).

The court's finding here is bolstered by a recent decision of the Tenth Circuit in which the Governor was found not to be protected by Eleventh Amendment immunity. In contrast with the instant matter, in *Eaves v. Polis*, the Court concluded that the Governor took direct action by issuing a memorandum denying an inmate plaintiff the right to possess religious items in a CDOC facility, and where the individuals enforcing the relevant administrative regulations reported directly to the Governor. *See* 167 F.4th 1304, 1314-15 (10th Cir. 2026). That explicit intervention in the specific business of regulating an inmate's access to certain property plausibly demonstrated that the Governor had "'some connection with the enforcement' of CDOC regulations and policies." *Id.* (quoting *Ex parte Young*, 209 U.S. at 157). There are no allegations of a similar sort of intervention here, by either the Governor or the Attorney General, in the context of a statute that is obviously interpreted and enforced in the courts. The court therefore finds that both officials enjoy Eleventh Amendment immunity on a claim attacking the constitutionality of a provision of the CGIA as applied to Mr. Woo.

Mr. Woo's arguments do not compel a different conclusion. He cites *Petrella v. Brownback*, 697 F.3d 1285 (10th Cir. 2012), and *Raven v. Polis*, 479 P.3d 918, *see* ECF No. 75 at 14 n.4, but neither case directly addresses the relevant point here. In *Petrella*, the Tenth Circuit acknowledged that "the proper vehicle for challenging the constitutionality of a state statute, where only prospective, non-monetary relief is sought, is an action against the state officials

responsible for the enforcement of that statute," and it remarked that "the Governor and Attorney General of the state of Kansas have responsibility for the enforcement of the laws of the state." *Id.* at 1294. But a differentiating factor in *Petrella* was that the specific school-funding statute at issue was explicitly "encompassed by [the executive branch's] general enforcement power. If a local school district were to violate the [statute at issue in *Petrella*], it would be the governor and the attorney general that would take any enforcement action, as provided by the Kansas State Constitution." *See Hendrickson*, 434 F. Supp. 3d 1014, 1032 (D.N.M. 2020) (alterations in original) (citing *Petrella*, 697 F.3d at 1294), *aff'd*, 992 F.3d 950 (10th Cir. 2021). No corollary statute, conferring specific enforcement authority on the Governor or the Attorney General, is applicable here.

Similarly, *Raven*, a case brought in a Colorado state court raising state law claims, has no bearing on the issue before this court. In *Raven*, the Colorado Supreme Court found that it was proper to name the Governor as a defendant in a state proceeding challenging treatment of transgender women pursuant to CDOC policies, but the issue of immunity under the Eleventh Amendment was not implicated because that Amendment does not apply in state court. *See generally Raven*, 479 P.3d 918 (no reference to the Eleventh Amendment or immunity principles); *see also Hilton v. S.C. Pub. Railways Comm'n*, 502 U.S. 197, 205 (1991) ("The Eleventh Amendment does not apply in state courts.") (quotation omitted). Here, Mr. Woo seeks to sue the Governor not based on policies implemented by the CDOC, "an executive agency directly within the Governor's control" and "over which he has ultimate authority," *see Raven*, 479 P.3d at 922, but rather to extricate himself from the effects of a general statute that applies to all public entities in Colorado that the Governor (and the Attorney General) have no specific

authority to enforce. *See* Colo. Rev. Stat. § 24-10-103(5).

In so finding, the court observes that Mr. Woo can—and, indeed, has—raised these constitutional objections to the CGIA in state court. *Woo v. El Paso Cnty. Sheriff's Office*, 490 P.3d 884, 888 (Colo. App. 2020) (holding tha the CGIA barred Woo's replevin claim), *aff'd*, 528 P.3d 899, 912 (Colo. 2022) ("we agree with the division that the CGIA's bar of Woo's replevin in detention action does not render the CGIA, as applied to him, unconstitutional"), *cert. denied*, 143 S. Ct. 2475 (2023). The state court was the proper forum for Mr. Woo's claim, and the bar of Eleventh Amendment immunity precludes him from attempting to achieve a different result here.

The Governor and the Attorney General lack the required enforcement connection to the CGIA to fall within the *Ex parte Young* exception to the Eleventh Amendment. Both are entitled to immunity. The undersigned therefore respectfully **RECOMMENDS** that Claim Two be **DISMISSED without prejudice**. *See, e.g.*, *Brereton*, 434 F.3d at 1218 ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.").

## CONCLUSION

Consistent with the foregoing, it is respectfully **RECOMMENDED** as follows:

(1) That the Motion to Dismiss Second Amended Complaint filed by Defendants Barr, Edwards, Stancil, Sanchez, Sandoval, Puga, and Long (ECF No. 87) be **GRANTED**;

(2) That the Governor and the Attorney General's Motion to Dismiss the Second Amended Complaint (ECF No. 111) be **GRANTED**;

(3) That Defendants De La Cruz and Piccioni's Motion to Dismiss Second Amended

Complaint (ECF No. 113) be **GRANTED**;

(4) That Claims One, Three, and Four be **DISMISSED with prejudice**;

(5) That Claim Two be **DISMISSED without prejudice** for lack of subject-matter jurisdiction; and

(6) That the Court **DECLINE to exercise supplemental jurisdiction** over Claim Five under 28 U.S.C. § 1367(c)(3), and that Claim Five accordingly be **DISMISSED without prejudice**.[20]

DATED: September 30, 2026

BY THE COURT:

Susan Prose
United States Magistrate Judge

[20] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1)(A), (B); Fed.R.Civ.P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objective and the consequences of failing to object").